598 S.E.2d 387 (2004)
In re J.L.K., a minor juvenile.
No. COA03-421.
Court of Appeals of North Carolina.
July 6, 2004.
*388 Richard E. Jester, Louisburg, for respondent-appellant.
G.K. Spence, Spence & Tetreault, P.A., by Martin A. Tetreault, Smithfield, for petitioner-appellee, S.B.
James D. Johnson, Benson, as Guardian ad Litem.
ELMORE, Judge.
G.K. (respondent) appeals from an adjudication, announced orally in open court following a hearing on 21 August 2002 and subsequently reduced to a written order, signed, and filed on 19 November 2002, terminating his parental rights to his daughter, J.L.K. For the reasons stated herein, we affirm.
The record establishes the following: respondent and the petitioner herein, S.B., are the parents of J.L.K., who was born on 15 June 1997. By agreement between petitioner and respondent, J.L.K. has been in petitioner's custody since shortly after her birth. At the time of J.L.K.'s birth, respondent was in the midst of what he admits has been a "long ongoing problem with alcohol." Respondent's alcohol problem has had a negative impact on his ability to parent J.L.K. Petitioner testified at the TPR hearing that on one occasion when J.L.K. was approximately two months old, respondent got drunk and "was throwing [J.L.K.] up in the air, and [petitioner] had to stop him." Petitioner testified that a few months later, on 7 November 1997, respondent came to her home drunk and fired a gun into the residence, while J.L.K. was present therein. Respondent was arrested that night and incarcerated until June 1998. Respondent had *389 very limited contact with J.L.K. from the time of his release until October 1998, when petitioner told respondent she never wanted to see or hear from him again due to his drunken, violent, and erratic behavior, and because she "couldn't depend on [respondent] to take care of [J.L.K.] because he was drunk all the time." Petitioner testified that respondent has not seen J.L.K. since October 1998.
Respondent was again jailed in April 1999 and has remained incarcerated at all times since. He is currently serving a 115-144 month sentence pursuant to a plea agreement on charges of being a habitual felon, possession of a firearm by a felon, discharging a firearm into occupied property, embezzlement, and multiple counts of possession of stolen goods, forgery, uttering, and larceny. Respondent's projected release date is March 2009, at which time J.L.K. will be almost 12 years old. Respondent has never called J.L.K. since his incarceration in 1999, although he has regularly called and written other family members and his attorney during that time, and his only communications with J.L.K. since then appear to have been a Christmas card sent in December 2001, a Valentine's Day card sent in February 2002, and a birthday card containing five dollars sent in June 2002. Petitioner testified that during J.L.K.'s life she has never received any child support from respondent.
Respondent was present at the TPR hearing and testified that prior to his incarceration in November 1997, he often cared for J.L.K. while petitioner was at work. Respondent admitted that he had "done some pretty bad things" and "a lot of things [petitioner] says are right, and [petitioner]'s right in what she's saying" with respect to his behavior towards petitioner and J.L.K. Respondent explained his lack of contact with J.L.K. after October 1998 by testifying that petitioner told him "she would have [him] locked up for the rest of [his] life if [he] called back, and [he] didn't." Respondent testified that he has attended Alcoholics Anonymous and Narcotics Abusers Anonymous meetings while incarcerated and that he thinks he could be a better example to J.L.K. when he is released from prison, but "[he's] not going to say that [he's] a changed person."
Petitioner, who at all times relevant to this matter has resided with J.L.K. in Wake County, initiated the underlying proceedings by filing her petition to terminate respondent's parental rights in neighboring Johnston County on 11 March 2002. Respondent, who was at that time incarcerated in Johnston County, was properly served on 15 March 2002 and thereafter filed a pro se written response to the TPR petition on 2 April 2002, in which he expressed his intent to contest the TPR petition and requested court-appointed counsel. On 29 April 2002, respondent's appointed counsel filed an answer denying the allegations of the TPR petition. Immediately following the arguments of counsel and presentation of evidence by both petitioner and respondent at the TPR hearing on 21 August 2002, the trial court orally granted the TPR petition. Respondent gave notice of appeal from this adjudication on 4 September 2002. Thereafter, the trial court's adjudication was reduced to a written order, signed, and entered on 19 November 2002. The TPR order contained the following relevant findings of fact:
1. The child, [J.L.K.], was born on June 15, 1997 in Raleigh, North Carolina. The child resides in Wake County, North Carolina, near the Johnston County line and spends considerable time in Johnston County.
....
3. The minor child was present in Johnston County at the time the Petition in this matter was filed.
....
5. The Respondent[ ] ... currently resides at Piedmont Correctional Institution, although at the time that he was served, he resided at Johnston Correctional Institution, located in Johnston County, North Carolina....
....
9. Respondent has not seen his child since October 1998.
10. Respondent will remain in the custody of the North Carolina Department of [C]orrections until 2009.

*390 ....
12. In the six months immediately preceding the filing of this action, Respondent did not call the minor child and his contact with the child was limited to two cards.
13. In the six months immediately prior to the hearing in this matter, Respondent's contact with the minor child was limited to one card.
14. During the same period, Respondent regularly corresponded with his attorney and called his mother twice per month.
15. Respondent has willfully failed without justification to pay for the care, support and education of the child for a period of one year or more prior to his incarceration on August 24, 1999.
16. Respondent has willfully failed without justification to pay for the care, support and education of the child for a period of one year or more next preceding the filing of this action.
17. [Respondent] has neglected the juvenile within the meaning of N.C.G.S. § 7B-101.
18. [Respondent] has willfully abandoned the child for at least six consecutive months immediately preceding the filing of the petition.
19. The juvenile has no relationship with [respondent] as a result of Respondent's repeated incarcerations.
20. The juvenile is doing well at the private school she attends in Raleigh, North Carolina.
21. The best interests of the child require that parental rights of the respondent be terminated in this preceding.
From these findings, the trial court concluded, in relevant part, as follows:
2. The minor child was found in Johnston County, which is part of this District, at the time of the filing of the Petition in this matter, as required by N.C.G.S. § 7B-1101, and this Court has exclusive jurisdiction over this matter.
3. Grounds exist for terminating the parental rights of the Respondent with respect to the child as set fort above in the Findings of Fact.
4. The best interests of the child require that the parental rights of the Respondent be terminated.
From this order terminating his parental rights to J.L.K., respondent appeals.
By his first assignment of error, respondent contends that because the TPR order was not reduced to writing, signed, and filed within 30 days following the completion of the TPR hearing, the TPR order must be vacated. We disagree.
Section 7B-1109(e) of our General Statutes provides that, following the trial court's adjudication of a TPR petition, "[t]he adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing." N.C. Gen.Stat. § 7B-1109(e) (2003). In the present case, the TPR hearing was held on 21 August 2002 and the trial court did not enter the written order until 89 days later, on 19 November 2002. While the trial court's delay clearly violated the 30-day provision of N.C. Gen.Stat. § 7B-1109(e), we find no authority compelling that the TPR order be vacated as a result. Further, we reject respondent's assertion that because section 7B-1109(e) provides that a TPR order "shall" be reduced to writing, signed, and entered within 30 days, this Court's decision in In re Alexander, 158 N.C.App. 522, 581 S.E.2d 466 (2003) requires that we vacate the TPR order.
In Alexander, this Court held that in a proceeding to terminate parental rights, the petitioner's failure to comply with the mandatory notice requirements set forth in N.C. Gen.Stat. § 7B-1106.1, which provides that the petitioner "shall" prepare notice directed to the juvenile's parents and that the notice "shall" contain certain elements, was prejudicial error. Alexander, 158 N.C.App. at 523, 581 S.E.2d at 467. In reaching this conclusion, the Alexander Court stated that "[t]he mandatory nature of the language employed in N.C. Gen.Stat. § 7B-1106.1 is underscored by N.C. Gen.Stat. § 7B-1102[(b)], which states, in relevant part, that the service of the motion for termination of parental rights `and the notice required by G.S. 7B-1106.1 shall be... in accordance with G.S. 1A-1, *391 Rule 5(b)'...." Alexander, 158 N.C.App. at 524, 581 S.E.2d at 468 (emphasis omitted). In rejecting the petitioner's argument that this error was not prejudicial because the respondents received actual notice, the Alexander Court stated that "[t]he notice requirements at issue are part of a statutory framework intended to safeguard a parent's fundamental rights `to make decisions concerning the care, custody, and control of their children.'" Alexander, 158 N.C.App. at 525, 581 S.E.2d at 468 (quoting Troxel v. Granville, 530 U.S. 57, 66, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 57 (2000)).
In the present case, unlike Alexander, the statute at issue is not "underscored" by the "interlocking provisions" of two additional statutes in directing the trial court to reduce its adjudication to writing and enter the resulting TPR order within a prescribed time period. Alexander, 158 N.C.App. at 524, 581 S.E.2d at 468. Nor does section 7B-1109(e)'s 30-day provision implicate a fundamental right, unlike the notice requirement of section 7B-1106.1, the statute at issue in Alexander. Finally, section 7B-1109(e) directs the trial court to enter an order within 30 days after the completion of a TPR hearing, while section 7B-1106.1 directs the petitioner to notify the respondent that proceedings to terminate his or her parental rights have been commenced and that a TPR hearing will be held at a future date. Because the differences in section 7B-1109(e) and section 7B-1106.1 are manifest, we conclude that our decision in In re Alexander does not require us to vacate the TPR order in the present case.
Moreover, we conclude that, on these facts, vacating the TPR order is not an appropriate remedy for the trial court's failure to enter the order within 30 days of the hearing. Our review of the transcript reveals that in her oral adjudication, the trial judge stated that neglect and abandonment had been proven by clear, cogent and convincing evidence as the grounds upon which respondent's parental rights were being terminated. Respondent filed his written notice of appeal from the trial court's adjudication on 4 September 2002, shortly after the TPR hearing and almost two and a half months before the TPR order was reduced to writing, signed, and entered. Respondent has failed to demonstrate that he suffered any prejudice by the trial court's delay. Accordingly, respondent's first assignment of error is overruled.
By his second assignment of error, respondent contends that the evidence presented at the TPR hearing was not sufficient to support the termination of respondent's parental rights. We disagree.
Section 7B-1111 of our General Statutes sets forth the statutory grounds for terminating parental rights. A finding of any one of the grounds enumerated therein, if supported by competent evidence, is sufficient to support a termination. In re Taylor, 97 N.C.App. 57, 64, 387 S.E.2d 230, 233-34 (1990). "[T]he party petitioning for the termination must show by clear, cogent, and convincing evidence that grounds authorizing the termination of parental rights exist." In re Young, 346 N.C. 244, 247, 485 S.E.2d 612, 614 (1997); see also N.C. Gen.Stat. § 7B-1111(b) (2003). "If the petitioner meets its burden of proving that there are grounds to terminate parental rights, the trial court then will consider whether termination is in the best interests of the child.... [T]he trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the child's best interests." In re McMillon, 143 N.C.App. 402, 408, 546 S.E.2d 169, 174 (2001) (citation omitted).
On appeal, the trial court's decision to terminate parental rights is reviewed on an abuse of discretion standard, In re Nesbitt, 147 N.C.App. 349, 352, 555 S.E.2d 659, 662 (2001), and we must affirm "where the court's findings of fact are based upon clear, cogent and convincing evidence and the findings support the conclusions of law." In re Allred, 122 N.C.App. 561, 565, 471 S.E.2d 84, 86 (1996).
In the present case, the trial court found as grounds for terminating respondent's parental rights that respondent had neglected J.L.K. pursuant to N.C. Gen.Stat. § 7B-1111(a)(1), and that respondent had willfully abandoned J.L.K. pursuant to N.C. Gen.Stat. § 7B-1111(a)(7). After a careful review of *392 the record, we conclude that both grounds are supported by clear, cogent, and convincing evidence.
Pursuant to N.C. Gen.Stat. § 7B-1111(a)(1), the trial court may order termination of parental rights where "[t]he parent has abused or neglected the juvenile. The juvenile shall be deemed to be ... neglected if the court finds the juvenile to be... a neglected juvenile within the meaning of G.S. 7B-101." N.C. Gen.Stat. § 7B-1111(a)(1) (2003). Section 7B-101(15) of our General Statutes defines a "neglected juvenile" as:
A juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent[ ] ...; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of law.
N.C. Gen.Stat. § 7B-101(15) (2003). This Court has stated that "[a]n individual's `lack of parental concern for his child' is simply an alternate way of stating that the individual has failed to exercise proper care, supervision, and discipline as to that child." In re Williamson, 91 N.C.App. 668, 675, 373 S.E.2d 317, 320 (1988). Moreover, a parent's "failure to provide the personal contact, love, and affection that inheres in the parental relationship" is a proper consideration in determining whether neglect has occurred. Whittington v. Hendren (In re Hendren), 156 N.C.App. 364, 368, 576 S.E.2d 372, 375-76 (2003).
Section 7B-1111(a)(7) of our General Statutes also permits the trial court to terminate parental rights where "[t]he parent has willfully abandoned the juvenile for at least six consecutive months immediately preceding the filing of the petition or motion[.]" N.C. Gen.Stat. § 7B-1111(a)(7) (2003).
In the present case, the trial court found that when the TPR petition was filed in March 2002, respondent had not seen his daughter since October 1998, a period of almost three and a half years. The trial court found that respondent's only communication with J.L.K. in the six months preceding filing of the TPR petition was sending her two cards, and that respondent's only communication with J.L.K. in the six months prior to the TPR hearing was sending her one card. The trial court found that respondent communicated with his mother and his attorney, by telephone and in writing, on a regular basis during this period. While respondent contends his opportunities to show filial affection for J.L.K. have been limited by his current incarceration, we note that respondent did not visit or communicate with J.L.K. during the approximately six-month period before his current incarceration began, and that his contact with J.L.K. following his release from jail in June 1998 until his last visit with her in October 1998 was extremely limited. Moreover, this Court has stated that "[i]ncarceration alone ... does not negate a father's neglect of his child.... Although his options for showing affection are greatly limited, the respondent will not be excused from showing interest in his child's welfare by whatever means available." Hendren, 156 N.C.App. at 368, 576 S.E.2d at 376.
The record also reveals that respondent's problems with alcohol prevented him from showing proper parental concern for J.L.K. well before his current incarceration, culminating in the trial court's finding that respondent fired a gun into petitioner's residence while J.L.K., then approximately five months old, was inside. The trial court also found that respondent had failed to support J.L.K. financially "for a period of one year or more" prior to his current incarceration.
We conclude that petitioner carried her burden of showing by clear, cogent, and convincing evidence that respondent neglected and abandoned J.L.K., and that the trial court's findings support its conclusions of law. Moreover, we conclude that the trial court did not abuse its discretion by finding it was in J.L.K.'s best interest to terminate respondent's parental rights. Hendren, 156 N.C.App. at 370, 576 S.E.2d at 377 (trial court did not abuse its discretion by finding it was in the juvenile's best interest to terminate the respondent's parental rights, "[c]onsidering the ideal situation which the child currently enjoys with petitioner and her husband, and considering respondent's long incarceration[.]") *393 Here, the guardian ad litem testified that J.L.K. currently lives in a "very appropriate" setting with petitioner and her sixteen-year-old half-brother, and that J.L.K. enjoys "a very good relationship" with each of them. The trial court found that J.L.K. currently has no relationship with respondent and that respondent will remain in prison until 2009, when J.L.K. will be twelve years old. We conclude that the trial court did not abuse its discretion. Respondent's second assignment of error is overruled.
By his final assignment of error, respondent contends that because petitioner filed the TPR petition in Johnston County rather than J.L.K.'s home county of Wake, the trial court did not have subject matter jurisdiction to terminate respondent's parental rights. We disagree.
Section 7B-1101 of our General Statutes provides that a trial court
shall have exclusive original jurisdiction to hear and determine any petition or motion relating to termination of parental rights to any juvenile who resides in, is found in, or is in the legal or actual custody of a county department of social services or licensed child-placing agency in the district at the time of filing of the petition or motion.
N.C. Gen.Stat. § 7B-1101 (2003) (emphasis added). It is undisputed that J.L.K. has been a resident of Wake County since birth, and that respondent was incarcerated in Johnston County when the TPR petition was filed. It is also undisputed that at the moment the TPR petition was filed on 11 March 2002, J.L.K. was physically present in Johnston County.
We agree with petitioner's assertion that respondent's argument here confuses the issues of subject matter jurisdiction and venue. As our Supreme Court has stated, "[W]e must keep in mind the clear distinction between jurisdiction and venue. Jurisdiction implies or imports the power of the court; venue the place of action." Shaffer v. Bank, 201 N.C. 415, 418, 160 S.E. 481, 482 (1931). Moreover, "[i]t is a generally accepted principle that the courts of the state in which a minor child is physically present have jurisdiction consistent with due process to adjudicate a custody dispute involving that child." Lynch v. Lynch, 302 N.C. 189, 193, 274 S.E.2d 212, 217, modified and affirmed, 303 N.C. 367, 279 S.E.2d 840 (1981).
We conclude that the trial court properly exercised subject matter jurisdiction in the case at bar. If respondent felt Johnston County was an improper setting for the termination proceedings, it was incumbent upon him to either move for a change of venue prior to answering the TPR petition or object to venue in his answer, or his right to seek a change of venue would be waived. N.C. Gen.Stat. § 1A-1, Rule 12(b) (2003). The record indicates that respondent did neither. Accordingly, and because J.L.K. was "found" in Johnston County when the TPR petition was filed, the trial court properly exercised its jurisdiction pursuant to N.C. Gen.Stat. § 7B-1101 in terminating respondent's parental rights.
Affirmed.
Judges BRYANT and CALABRIA concur.