IN THE MATTER OF: K.D.L.

No. COA05-773

(Filed 21 February 2006)

**1. Termination of Parental Rights— incarcerated father—deposition denied—no prejudice**

There was no prejudice in the denial of respondent's motion to be deposed in a termination of parental rights proceeding where respondent was incarcerated in Tennessee. The findings of

**IN RE K.D.L.**

[176 N.C. App. 261 (2006)]

fact from a prior child custody and equitable distribution proceeding were binding by collateral estoppel and respondent would thus be precluded from challenging the factual allegations made by the mother in this proceeding. The father's interest is outweighed by the absence of any indication that his deposition would have led to a different result.

## 2. Termination of Parental Rights— order not timely reduced to writing—no prejudice

There was no prejudice in a termination of parental rights proceeding from the court's failure to reduce its order to writing within the statutory thirty-day time frame.

Appeal by respondent father from judgment entered 9 June 2004 by Judge Kyle Austin in Watauga County District Court. Heard in the Court of Appeals 26 January 2006.

*Eggers, Eggers, Eggers & Eggers, by Stacy C. Eggers, IV, for petitioner mother-appellee.*

*Don Willey, for respondent-appellant.*

TYSON, Judge.

Shawn Lambert ("respondent") appeals from an order terminating his parental rights to his minor child K.D.L. We affirm.

### I.  Background

K.D.L.'s mother filed a petition to terminate respondent's parental rights on 11 February 2004. Respondent filed a *pro se* answer on 1 March 2004 and denied the allegations raised in the petition. Counsel was appointed for respondent on 3 March 2004. Respondent, through counsel, filed a motion for funds to depose respondent due to his being incarcerated in Tennessee and for a continuance of the hearing to allow time for the deposition on 15 April 2004. The district court denied respondent's motions and terminated his parental rights on 19 April 2004. The court reduced its order to writing on 9 June 2004. Respondent appeals.

### II.  Issues

Respondent argues the trial court erred when it: (1) denied respondent's motion to be deposed because of his incarceration and inability to be present for the proceedings; and (2) failed to reduce its order to writing within the statutory thirty-day time frame.

### III.  Standard of Review

On appeal, our standard of review for the termination of parental rights is whether the trial court's findings of fact are based upon clear, cogent and convincing evidence and whether the findings support the conclusions of law.

*In re Baker*, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003) (citations and internal quotations omitted).

"[T]he trial court's conclusions of law are reviewable de novo." *In re Pope*, 144 N.C. App. 32, 40, 547 S.E.2d 153, 158, *aff'd*, 354 N.C. 359, 554 S.E.2d 644 (2001).

### IV.  Respondent's Testimony

[1] Respondent argues the trial court erred when it denied respondent's motion to be deposed because of his incarceration and inability to be present for the proceedings.

Respondent was incarcerated in Washington County, Tennessee at the time of the 19 April 2004 hearing. Respondent, through his attorney, requested a continuance of the case and funds to obtain respondent's deposition. The trial court denied respondent's request. Respondent contends the trial court failed to provide him with "fundamentally fair procedures." *Santosky v. Kramer*, 455 U.S. 745, 753, 71 L. Ed. 2d 599, 606 (1982) (stating, "forced dissolution of [a parent's] parental rights have a more critical need for procedural protection than do those resisting state intervention into ongoing family affairs.").

In *Santoksy v. Kramer*, the United States Supreme Court ruled on the degree of process constitutionally due to a natural parent in a termination of parental rights ("TPR") hearing. *Id.* The Court stated:

the nature of the process due in parental rights termination proceedings turns on a balancing of the "three distinct factors" specified in *Mathews v. Eldridge*, 424 U.S. 319, 335, 47 L. Ed. 2d 18, 33 (1976): the private interests affected by the proceeding; the risk of error created by the State's chosen procedure; and the countervailing governmental interest supporting use of the challenged process.

*Id.* at 754, 71 L. Ed. 2d at 607.

The Court stated, "freedom of personal choice in matters of family life is a fundamental liberty interest protected by the Fourteenth

Amendment." *Id.* at 753, 71 L. Ed. 2d at 606. "When the State moves to destroy weakened familial bonds, it must provide the parents with fundamentally fair procedures." *Id.* at 754, 71 L. Ed. 2d at 606.

This Court held in *In re Murphy* that due process does not provide an incarcerated parent "an absolute right to be transported to a termination of parental rights hearing in order that he may be present under either statutory or constitutional law." 105 N.C. App. 651, 652-53, 414 S.E.2d 396, 397, *aff'd*, 332 N.C. 663, 422 S.E.2d 577 (1992). In that case, this Court relied on *Lassiter v. Dep't of Social Servs.*, 452 U.S. 18, 68 L. Ed. 2d 640 (1981). In *Lassiter*, the United States Supreme Court affirmed a North Carolina Supreme Court ruling that the appointment of counsel is not constitutionally required in every TPR proceeding. This Court stated in *In re Murphy*, "a parent's absence from a termination proceeding is of similar import." 105 N.C. App. at 654, 414 S.E.2d at 398. "Fundamental fairness" does not require the State to transport an incarcerated parent to a termination proceeding. *Id.*

The Court found the governmental interest equal to that of the parent because transporting the father to the hearing from his place of incarceration "would have worked more than a mere financial burden on the State." 105 N.C. App. at 655, 414 S.E.2d at 398. The Court observed that, given that the respondent had been incarcerated for sexual abuse of his children, "[r]espondent's presence at the hearing combined with his parental position of authority over his children may well have intimidated his children and influenced their answers if they had been called to testify." *Id.* at 655, 414 S.E.2d at 398-99. Further, the Court pointed out that transportation of the father would create a risk of escape jeopardizing the safety of the public and the officers assigned to transport him. *Id.* at 655, 414 S.E.2d at 399.

The Court also stated, "[d]uring the hearing, respondent's attorney did not argue that his client would be able to testify concerning any defense to termination, nor did he indicate how his client would be prejudiced by not being present." *Id.* at 655, 414 S.E.2d at 399.

Neither of those concerns exist in this case. Since the father was proposing a deposition, his daughter would have no contact with him, and he presented no escape risk. Apart from the expense, the only other possible governmental interest that we have been able to identify is the desire to expedite the proceedings in order to resolve matters for the child. Yet, in this case, the petition was filed 11 February 2004, counsel was appointed 3 March 2004, the motion for funds was

**IN RE K.D.L.**

[176 N.C. App. 261 (2006)]

filed 15 April 2004, and the TPR hearing was held 19 April 2004. The State's interest in prompt resolution of these proceedings would not have been significantly affected by a brief continuance to allow the taking of the father's deposition.

In short, the sole governmental interest affected by the taking of a deposition and the granting of a continuance is monetary. Since the mother, and not the State, filed the TPR petition, the State would only have had to pay the father's costs for the deposition. Such a deposition could have been done telephonically, resulting in a relatively modest expense. For these reasons, the father's interest substantially outweighs any interest of the State.

However, with regard to the second *Eldridge* factor, no risk of error was created by the denial of the father's motion. With respect to this factor, the father argues that his testimony could have "denied point by point the allegations made by the mother in her petition." According to the father, "[t]he only real means by which this father could defend himself was to be able to present his side of the story." The doctrine of collateral estoppel, however, would have precluded the father from challenging the factual allegations made by the mother.

The mother alleged as a basis for her petition that the father had neglected the child by (1) being "in and out of jail for the last several years," (2) by "having committed acts of domestic violence against the petitioner and in the presence of the minor child," as found by the court in prior proceedings, and (3) the father "also threatened the minor child." She further alleged that the father "threatened abuse toward the minor child and the minor child has been abused by respondent father pursuant to N.C. Gen. Stat. § 7B-101(1)." In addition, the mother relied upon a willful failure to pay child support and willful abandonment of the child.

In an Order for Child Custody and Equitable Distribution, entered more than eight months before the TPR hearing and apparently not appealed, the district court made the following findings of fact:

10. After supervised visits with the [father] the child would be upset and crying. The child experienced nightmares, was nervous and refused to sleep by herself because she was fearful. The minor child required counseling.

11. That the defendant has violated the Domestic Violence Protective Order on a regular basis by sending numerous letters

to the [mother] and in that he has possessed a firearm in violation of the order. That since [father] has been incarcerated and not visiting with the minor child, the child has been more calm and less nervous.

. . . .

14. That the [father] is not fit and proper to have visitation with the minor child in that he has been mentally and emotionally abusive and violent to the minor child and has in fact threatened the minor child's life in the past. That the [father] had a gun and threatened to kill the child and all the family in the presence of the minor child.

Since the father did not appeal this order, these findings of fact were binding in the TPR hearing under the doctrine of collateral estoppel. *See In re Murphy*, 105 N.C. App. at 655, 414 S.E.2d at 399 ("Indeed, [counsel for the father] could point to no reason that the respondent should be transported to the hearing other than for respondent to contest his sexual assault convictions, an impermissible reason."); *In re Wilkerson*, 57 N.C. App. 63, 70, 291 S.E.2d 182, 186 (1982) (holding that collateral estoppel properly applied to findings made in a custody review hearing and rendered those findings binding in a subsequent TPR hearing).

Further, the father has not argued his testimony would be necessary to address the petition's other allegations. He does not contest his criminal record, which was admitted at the TPR hearing. His answer admitted that he had not paid child support, but asserted no payments had been made because he was incarcerated and no payment plan had been established. In addition, the father claimed that he had not abandoned his child, but rather was barred from seeing her because of a restraining order entered against him. The father has not offered any explanation why these arguments regarding child support and abandonment could not have been fully made by his counsel without his testimony.

Thus, as in *In re Murphy*, "[t]he record before us is devoid of anything which would indicate any risk of error to the respondent caused by" the trial court's denial of his motion. 105 N.C. App. at 656, 414 S.E.2d at 399. Given the absence of any indication that the father's deposition testimony could have led to a different result in the TPR hearing, the second *Eldridge* factor outweighs the father's interest. This assignment of error is overruled.

IN RE K.D.L.

[176 N.C. App. 261 (2006)]

### V. Order in Writing

**[2]** Respondent argues the trial court erred when it failed to reduce its order to writing within the statutory thirty-day time frame.

The trial court entered the order fifty days after the deadline. N.C. Gen. Stat. § 7B-1109(e) (2003) provides, "[t]he adjudicatory order shall be reduced to writing, signed, and entered no later than 30 days following the completion of the termination of parental rights hearing."

> This Court has previously stated that absent a showing of prejudice, the trial court's failure to reduce to writing, sign, and enter a termination order beyond the thirty day time window may be harmless error. *See In re J.L.K.*, 165 N.C. App. 311, 315, 598 S.E.2d 387, 390 (2004) (order entered eighty-nine days after the hearing), *disc. rev. denied, Beatenhead v. Lincoln County, Lincoln County Board of Education*, 359 N.C. 177, 604 S.E.2d 914 (2004).

*In re L.E.B., K.T.B.*, 169 N.C. App. 375, 378, 610 S.E.2d 424, 426, *disc. rev. denied*, 359 N.C. 632, 616 S.E.2d 538 (2005).

Respondent failed to argue how the twenty-day delay prejudiced him. Respondent admits, "[t]his Court has not previously found prejudice to exist from this short of a time violation." This Court does not condone the late entry of orders beyond the required statutory periods in any action. Late entry orders in a TPR proceedings is particularly troubling due to the denial of finality for all parties involved. In light of respondent's failure to show any prejudice, this assignment of error is overruled.

### VI. Conclusion

The trial court did not err when it denied respondent's motion to be deposed because of his incarceration and inability to be present for the proceedings. Respondent has failed to show prejudice when the trial court failed to reduce its order to writing and file within the statutory thirty-day time frame. The trial court's order is affirmed.

Affirmed.

Judges HUDSON and GEER concur.