SHIRLEY DIXON REYNOLDS and RHODA S. DIXON, Plaintiffs,
v.
ERNEST LEE RIGGS, Defendant.
No. COA08-1585
Court of Appeals of North Carolina
Filed September 15, 2009
This case not for publication
Sumrell, Sugg, Carmichael, Hicks & Hart, P.A., by Arey W. Grady, and Anakah D. Harrison, Plaintiffs-Appellees.
Wheatly, Wheatly, Weeks & Lupton, P.A., by Claud R. Wheatly, III; and Walter M. Pence, III, for Defendant-Appellant.
BEASLEY, Judge.
This appeal arises from a property line dispute between Defendant and Plaintiffs. Defendant appeals from an amended order entered 23 June 2008. We affirm.
Plaintiff and Defendant are the owners of adjoining properties in rural Pamlico County, North Carolina. In 2001 Plaintiffs filed a trespass action against Defendant. A bench trial was conducted in November 2004. On 20 January 2005 the trial court entered judgment in favor of Plaintiffs. Defendant did not pursue an appeal from this order.
Years later the parties experienced renewed conflict. In March 2008, Plaintiffs filed a motion pursuant to N.C. Gen. Stat. § 1A-1, Rule 60(a), seeking correction of clerical errors in the original order. Plaintiffs asserted that in several places the court's order referred to the dirt road at issue in the case as the "westernmost" boundary of Plaintiffs' property, or stated that the ditch next to the dirt road was on the "west" side of the road. Plaintiffs contended that these references constituted a clerical error because the order should have said "east" instead of "west."
On 19 March 2008 a hearing was conducted on Plaintiffs' motion. The trial court did not reopen the case or take new evidence. On 23 June 2008 the trial court entered "Amended and Restated Findings of Fact, Conclusions of Law, Order and Judgment." The original and amended orders are the same, except for the substitution of "east" for "west" in four places in the document. Defendant appeals from the trial court's June 2008 amended and restated order.

Standard of Review
Defendant appeals from an amended order entered pursuant to Rule 60(a), which provides that "[c]lerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative or on the motion of any party[.]"
"To err is human." Rule 60 seeks to mitigate this human frailty, and thereby promote a more perfect justice. . . . Rule 60(a) is designed to assure that the court's records accurately reflect and effectuate the actual proceedings and decisions of the court and the parties.
In re Computer Learning Ctrs., Inc., 268 B.R. 468, 472 (E.D.Va. 2001) (quoting Alexander Pope, An Essay on Criticism, petitioner. ii, line 525)) (other citations omitted).
The rule does not, however, authorize the court to revisit its legal analysis or otherwise correct an "error[] of substantive judgment." . . . "The basic distinction between `clerical mistakes' and mistakes that cannot be corrected pursuant to Rule 60(a) is that the former consist of `blunders in execution' whereas the latter consists of instances where the court changes its mind[.]"
Pruzinsky v. Gianetti (In re Walter), 282 F.3d 434, 440 (6th Cir. 2002) (quoting Olle v. Henry & Wright Corporation, 910 F.2d 357, 364 (6th Cir. 1990), and Blanton v. Anzalone, 813 F.2d 1574, 1577 n.2 (9th Cir. 1987)).
On appeal, we review the trial court's rulings on a Rule 60 motion for abuse of discretion:
[T]he proceedings . . . involved a discretionary matter, i.e., the correction of an [error] . . . in an order of the court. G.S. 1A-1, Rule 60(a). A discretionary order is conclusive on appeal in the absence of abuse or arbitrariness, or some imputed error of law. . . . Therefore, our review is limited to determining whether the court acted within its discretion and whether it committed an error of law.
Ward v. Taylor, 68 N.C. App. 74, 84, 314 S.E.2d 814, 822 (1984) (citations omitted). See also, e.g., Woods v. Shelton, 93 N.C. App. 649, 653, 379 S.E.2d 45, 47 (1989) (where defendant assigns error to the "court's grant of plaintiff's motion to amend its . . . judgment pursuant to Rule 60(a)" that "the trial court did not abuse its discretion in granting plaintiff's motion").

Scope of Review
We next address the scope of our review of the revised order. The parties present arguments regarding whether the trial court's amendments were proper under Rule 60(a). This issue is appropriate for appellate review, and is addressed below. We conclude, however, that only these changes to the order are subject to appellate review.
Defendant did not appeal from the trial court's first order, entered in 2005, which therefore became final. State v. Holmes, 361 N.C. 410, 413, 646 S.E.2d 353, 355 (2007) (where "Defendant did not appeal . . . judgments" the Court holds that "consequently they became final[]"). Further, the doctrine of collateral estoppel bars Defendant from relitigating issues that were decided in the previous hearing, or challenging the findings and conclusions in the order. See, e.g., Doyle v. Doyle, 176 N.C. App. 547, 554, 626 S.E.2d 845, 850 (2006) (where court rules on issue of domestic violence between parties, doctrine of collateral estoppel "renders [court's] findings of fact binding on the subsequent child custody proceeding regarding those events").
"Broadly speaking, `estoppel is a bar which precludes a person from denying or asserting anything to the contrary of that which has, in contemplation of law, been established as the truth.'" Whitacre P'ship v. BioSignia, Inc., 358 N.C. 1, 13, 591 S.E.2d 870, 879 (2004) (quoting 28 Am. Jur. 2d Estoppel and Waiver § 1 (2000)).
Under the doctrine of . . . collateral estoppel, also known as `estoppel by judgment' or `issue preclusion,' the determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding.
Id. at 15, 591 S.E.2d at 880 (citations omitted). We conclude that "[s]ince [Defendant] did not appeal this order, these findings of fact were binding in the [subsequent] hearing under the doctrine of collateral estoppel." In re K.D.L., 176 N.C. App. 261, 266, 627 S.E.2d 221, 224 (2006) (respondent who fails to appeal custody order bound by its findings in later termination of parental rights hearing).
Defendant argues that the trial court's amendments to the original order made substantive changes to the parties' rights, and were not proper under Rule 60(a). We analyze this issue in the context of the entire order. "`Judgments must be interpreted like other written documents, not by focusing on isolated parts, but as a whole. The interpreting court must take into account the pleadings, issues, the facts of the case, and other relevant circumstances.'" Kniep v. Templeton, 185 N.C. App. 622, 631, 649 S.E.2d 425, 431-32 (2007) (quoting Reavis v. Reavis, 82 N.C. App. 77, 80, 345 S.E.2d 460, 462 (1986)) (internal citations omitted).
As discussed above, the findings and conclusions in the amended order are conclusively established on appeal, with the exception of the court's amendments to the original order. The trial court made extensive findings of fact in its original order, which were unchanged in the revised order, and we find it instructive to set out certain findings of fact. Findings pertinent to this appeal include:
4. Plaintiff[s] . . . own an interest in . . . parcels of real estate described in deed recorded in Book 112, Page 579 in the Office of the Register of Deeds of Pamlico County, North Carolina; said real property being referred to herein as "Plaintiffs' real property."
5. Defendant Ernest Lee Riggs claims an interest in those certain tracts of real property as described in deeds recorded in Book 248, Page 211 and Book 342, Page 715 in the Office of the Register of Deeds of Pamlico County, North Carolina, said real property being referred to herein as "Defendant's real property."
6. Plaintiffs' real property and Defendant's real property are located in the same vicinity.
. . . .
8. At all times of relevance to this case, both the Plaintiffs, Plaintiffs' predecessor in interest and adjoining landowners, including Defendant, have treated as the boundary line of plaintiffs' real property a certain drainage ditch, said ditch being referred to herein as the "Boundary Line Ditch." The Boundary Line Ditch . . . is best depicted as the "marked line" being the southern most boundary having a course and distance of north 41" 39' west 1099.5 feet on the survey map filed in Book 248, Page 213; in the Office of the Register of Deeds of Pamlico County, North Carolina, and as the boundary line depicted as having a course and distance of south 51° 06' 32" east 1058.21 feet on the survey map filed in Plat Cabinet A, Slide 92-7, in the Office of the Register of Deeds of Pamlico County; North Carolina. . . . Defendant Ernest Lee Riggs used and possessed Defendant's real property up to but not beyond the Boundary Line Ditch at issue in this case.
These findings of fact establish the physical location of the properties at issue in this case. Additionally, the trial court took judicial notice of aerial photographs of properties at issue and of the land records for Pamlico County. The referenced land records and exhibits depicting the parcels at issue in this case establish without dispute that Plaintiffs' real property is entirely to the west and south of Defendant's three parcels, and none of Defendant's real property is located to the west of Plaintiffs' real property. The significance of this is that the boundary lines of relevance in this case constitute the southern and western boundaries of Defendant's property, and the only east/west boundary between Plaintiffs' and Defendant's properties must be the western boundary of Defendant's land and the eastern boundary of Plaintiffs'.
The findings of fact also establish unequivocally that Plaintiffs' real property includes the dirt road in controversy, called the "soil road," and that Plaintiffs own this road. The underlined emphasis is added by this Court, and the directional labels that were corrected by the trial court are indicated in bold face type. We note the following findings:
7. Since 2001, Defendant has repeatedly cruised the timber located on Plaintiffs' real property[.] . . . Additionally, Defendant has attempted to prohibit Plaintiffs' use of the road located on Plaintiffs' real property. Moreover, since 2001 Defendant has repeatedly gone onto Plaintiffs' real property without the consent of Plaintiffs.
. . . .
9. In addition to the Boundary Line Ditch, a portion of a dirt road or path and accompanying ditching located on the boundary of Plaintiffs' real property, originally constructed and maintained by the Plaintiffs, defines the westernmost boundary line of plaintiffs' real property. The portion of the dirt road, the westernmost boundary line of which has served as a boundary of Plaintiffs' real property, is generally shown on or described in various documents entered into evidence in this case and is best depicted as the "soil road" shown on that survey recorded in Plat Cabinet A, Slide 92-7 in the Office of the Register of Deeds of Pamlico County, North Carolina. The ditch located just to the west of said road generally serves as the boundary of plaintiffs' real property from the start of said road at the end of Keystown Road until its intersection with the Boundary Line Ditch.
10. Plaintiffs inherited their interest in Plaintiffs' real property from S. E. Dixon, the father of Plaintiff Shirley Dixon Reynolds and the spouse of Plaintiff Rhoda S. Dixon. .. . [A]fter he originally purchased Plaintiffs' real property in 1949, S.E. Dixon began the construction of a road from the end of Keystown Road through Plaintiffs' real property. . . . Upon S. E. Dixon's death in 1959, the road was unfinished.
11. After S.E. Dixon's death in 1959, Plaintiff Rhoda S. Dixon continued the construction of the road to Scott's Store Road, also known as State Road 1108. In all, construction of the road . . . took approximately ten years and involved the clearing of approximately four acres of land, ditching, removing trees and stumps and installing a culvert across a stream[.] . . . The approximate location of the road . . . is shown and depicted on the exhibits attached to several affidavits in this case, and is further depicted on the aerial tax map and several surveys admitted into evidence in this case.
12. Since the initial construction of the road, Plaintiffs, and specifically Plaintiff Rhoda S. Dixon, have maintained the road as a private road. In addition, Plaintiffs, and specifically Plaintiff Rhoda S. Dixon, have taken several steps to prevent and prohibit other individuals from using the road. At one point in the 1970s, Plaintiff Rhoda S. Dixon filed a civil suit against an individual to prevent the individual's trespassing use of the road, and the trial court found in favor of Rhoda S. Dixon. Similarly, for many, many years, the road has been gated and locked by Plaintiffs and their tenant so as to prohibit others from using the road. Plaintiffs' tenant, Ben Potter, possesses keys to the locked gates and has been given specific instructions to prohibit the use of the road by others.
13. The location of Plaintiffs' real property and the boundary lines to Plaintiffs' real property have been clearly established. Specifically, the second tract of Plaintiffs' real estate is known T. L. Boyd's homestead, and the location of that tract has been well known in the local community. Furthermore, the location of the first tract, known as the J B. Boyd homestead, has been well known in the local community. T. L. Boyd's actual homestead was located between the road constructed by Plaintiffs S. E. Dixon and Rhoda S. Dixon and the Boundary Line Ditch. Similarly, J. B. Boyd's homestead was located in the Boyd field just to the west of the road's intersection with the Boundary Line Ditch. . . .
14. In addition, at some point Plaintiff Rhoda Scott Dixon relocated the road on plaintiffs' real property from its former location to its present location. The relocation of a portion of the road essentially shifted the road to the south. Both the former and present location of this portion of the road was shown by several witnesses on the aerial tax map and surveys introduced into evidence in ths case.
15. . . . [S]everal drainage ditches crisscrossed Plaintiffs' real property in the area between the road and the Boundary Line Ditch. Plaintiffs and their predecessor in interest both constructed and maintained these drainage ditches, which run in a generally southerly direction from the Boundary Line Ditch to and under the road. The location of these drainage ditches has been identified by several witnesses upon the various maps and surveys introduced into evidence in this case.
16. Plaintiffs, their predecessor in interest, tenants and invitees . . . have been in actual, open, hostile, exclusive and continuous possession of Plaintiffs' real property for at least fifty years. Plaintiffs' possession as herein described has been explicitly or implicitly recognized and acquiesced in by adjoining landowners, including specifically Defendant Ernest Lee Riggs. Plaintiffs' historical and continued possession of their real property has been up to specific and identifiable lines upon the ground, namely the Boundary Line Ditch and westernmost boundary line defined by the road.
Based on its findings of fact, the trial court concluded, inter alia, that "there are two independently sufficient grounds supporting the order and judgment rendered herein[,]" and that the boundary lines of Plaintiffs' property had been set both by (1) acquiescence and (2) adverse possession. The court also concluded:
4. Plaintiffs' possession of Plaintiffs' real property both establishes title to and ownership of Plaintiffs' real property and definitively sets the boundary lines between plaintiffs' real property and adjoining tracts. Plaintiffs' historical possession of their real property has been up to but not beyond the boundary line and the westernmost boundary of the road in this case. Likewise, manmade differences in vegetative growth and maintenance between the Plaintiffs' real property and that of adjoining landowners clearly and definitively sets the boundary of Plaintiffs' real property.
5. . . . Plaintiff has established ownership to Plaintiffs' real property and the boundary lines of said property. The boundary lines of Plaintiffs' real property, as established by Plaintiffs' adverse possession, are as described in Findings of Fact numbers 8 and 9 above, and the properties to the south and west of said lines are conclusively vested in plaintiffs as their interests may appear.
Upon these and other findings and conclusions, the trial court ordered that "judgment is hereby entered in favor of Plaintiff[.]" The trial court's order stated that:
1. The boundary lines between Plaintiffs' real property and the real property claimed by Defendant have been definitively set as described in Findings of Fact numbers 8 and 9 above through acquiescence.
2. The boundary lines between Plaintiff' real property and the real property claimed by Defendant have been definitively set as described in Findings of Fact numbers 8 and 9 above through adverse possession, and the real property to the south and west of said lines is conclusively vested in Plaintiffs as [their] interests may appear.
3. Defendant Ernest Lee Riggs, his heirs, successors and assigns, is hereby permanently enjoined and restrained from trespassing upon Plaintiffs' real property for any purpose whatsoever, and shall be liable in contempt for any such future trespass.
4. The costs of this action be taxed to Defendant.
To summarize, the 20 January 2005 order establishes that (1) as regards to the properties at issue in this case, Plaintiffs' real property is located to the south and west of Defendant's real property; (2) Plaintiffs are the owners of the controverted "soil road" and associated ditching, located on Plaintiffs' real property and, (3) Defendant had been trespassing on Plaintiffs' real property.
In the context of the entire order, it is obvious that, because Plaintiffs' real property lies to the west of Defendant's, the boundary between the two must be the easternmost boundary of Plaintiffs' real property. This is established by reference to the exhibits and land records cited in the order, and the order's description in several places of Plaintiffs' land as being "to the south and west" of Defendant's property. The instances in the order wherein the words east and west were inadvertently transposed, if not corrected, would render the order both internally inconsistent and geographically nonsensical. Accordingly, the correction of these errors was an appropriate exercise of the trial court's authority under Rule 60(a) to correct clerical errors.
We conclude that the trial court's amendments were a clerical correction and not a substantive change which did not change the parties' respective rights, nor make any substantive change in the trial court's original rulings. Both the original and amended order conclude that Plaintiffs own the dirt road at issue, that Plaintiffs should prevail in the lawsuit, that Defendant was a trespasser on Plaintiffs' real property, and that said property was located to the south and west of Defendant's real property. These are the conclusions that establish the parties' substantive rights. The amendments simply corrected an inaccurate description of the location of a physical object (the soil road), identified in the order by reference to county records of which the court took judicial notice. The trial court had already ruled that Plaintiffs owned the road, and the changes merely corrected its original directional description of this road.
We conclude that the trial court did not err by correcting its clerical errors pursuant to Rule 60(a), and that its order should be
Affirmed.
Judges WYNN and STROUD concur.
Report per Rule 30(e).