IN THE MATTER OF KRISTOFOR SCOTT EVERETT, DOB 7/31/1993 AND BRITTNEY
NICOLE EVERETT, DOB 4/28/1994

THE NEW HANOVER COUNTY DEPARTMENT OF SOCIAL SERVICES, PETITIONER V.
LISA RENEE EVERETT AND ALFRED "JUNIOR" EVERETT, RESPONDENTS

No. COA03-316

(Filed 2 December 2003)

**Termination of Parental Rights— reunification—order allowing efforts to end**

An order relieving DSS from efforts to reunify respondent and his children was reversed because it did not comply with N.C.G.S. §§ 7B-507 and 7B-907 and because the evidence did not support the conclusion that reunification efforts should cease.

Appeal by respondent Alfred "Junior" Everett from order entered 20 September 2002 by Judge Shelly Sveda Holt in New Hanover County District Court. Heard in the Court of Appeals 30 October 2003.

*No brief filed for petitioner-appellee or Guardian ad Litem.*

*A. Michelle FormyDuval, for respondent-appellant.*

CALABRIA, Judge.

Alfred "Junior" Everett ("respondent") appeals the 20 September 2002 permanency planning order relieving New Hanover County Department of Social Services ("DSS") from facilitating reunification efforts between the minor children and their father, respondent. Respondent appeals asserting the trial court's findings were not supported by competent evidence and the order did not comport with the requirements of N.C. Gen. Stat. § 7B-507(b) and 7B-907(b). We agree and reverse the order of the trial court.

Respondent and his wife Lisa Renee Everett ("Lisa") lived together with the minor children in Fayetteville until April 2001 when Lisa moved with the children to her mother and stepfather's home in Wilmington. Thereafter, on 21 June 2001, DSS filed a petition alleging Kristophor Scott Everett and Brittney Nicole Everett ("the children"), both age seven, were abused, neglected and dependent children. The petition alleged both parents failed to provide "proper care, supervision and discipline" but no facts were alleged to support this allegation against respondent. Rather, the petition explained Lisa had

abused them by "kissing, licking and caressing pornographic materials" in front of the children. The court found Lisa thereby sexually abused her children while living in Wilmington with her parents, and while respondent resided in Fayetteville with his parents. The children were taken into DSS custody and placed in foster homes.

On 21 and 24 August 2001, the court held an adjudicatory hearing. With regard to respondent, the court found as fact:

> Alfred Everett has limited mental capacities. Mr. Everett cannot read and write. He has no driver's license and could not obtain a license. Mr. Everett is not able independent of his mother and step-father or sisters or other capable adult to provide adequate care and supervision of his children.

The court adjudicated the children "dependent and neglected" as to their father, respondent, on the basis that:

> [in the Spring of 2001], Mr. Everett resided with his wife and children [in Fayetteville]. During this time there were occasions in which Mr. Everett was aware and observed Ms. Everett administer medication to the children inappropriately by giving the child more medicine than prescribed. . . . Mr. Everett cannot maintain a residence of his own or reside independently without the assistance of others in transportation and other matters.

The court ordered respondent to "have a psychological evaluation and a psychiatric evaluation to determine the nature and extent of his limitations and his therapeutic needs . . . [and] to follow all recommendations for treatment."

Thereafter, the court conducted periodic review hearings. On 15 November 2001, the court held "[t]hat reunification remains the plan but determination on the course and pace of reunification is deferred until receipt of the psychological and psychiatric evaluations of both parents." Respondent was ordered to obtain the evaluations and follow the recommendations. On 17 January 2002, the court found that respondent "has been unable to obtain the evaluations from the Cumberland County Mental Health facility as of yet," although records reveal he had re-entered treatment there in an effort to comply with the court order. The court again held "[t]hat reunification remains the plan but reunification is not possible at this time."

In February and March 2002, respondent obtained both psychological and psychiatric evaluations from the Cumberland County Mental Health Center. The psychological evaluation revealed that

IN RE EVERETT

[161 N.C. App. 475 (2003)]

respondent has a Full Scale IQ score of 65, and lives with his mother and three of his other children. Although respondent is not able to work, he receives $545.00 per month in social security benefits. Despite respondent's prior drug and alcohol problem, he reported that he had not used either since 1993. The evaluator found no evidence of psychosis, delusional disorder, or depression. He noted respondent's "insight into his problems appeared to be extremely limited and his judgment is considered to be marginal due to intellectual limitation and tendency towards impulsivity." The evaluator raised concerns regarding respondent's ability to financially support and intellectually stimulate his children, especially considering the children's special needs. Nevertheless the evaluator recommended respondent "be referred for a parenting assessment to help clarify his ability to parent his children effectively" and "could benefit from participating in a parenting class." The psychiatric evaluation also revealed no evidence of "psychiatric distress" and listed his only limitation as his "mental retardation." The evaluation concluded that "[n]o further psychiatric intervention [is] indicated at the present time." Both evaluations concluded that respondent's abilities had not significantly changed since 1993, but respondent had changed his behavior, including ceasing drug and alcohol use and limiting his caffeine intake.[1]

Despite the evaluations concluding that respondent was not in need of treatment, DSS' report to the court preceding the permanency planning hearing reiterated that "Mr. Everett needs to come to terms with his mental health needs and be able to obtain treatment for himself." The report reasoned, "[i]t is virtually impossible for either parent to parent their children without some consistent treatment for themselves which would include both individual and joint counseling with their children and a medication assessment." The report also commented, "Mr. Everett still verbalizes to the Department that he wants to have his children with him, but without him being able to understand his own mental health issues and needs, he cannot effectively parent his children who also have special needs." Therefore, DSS determined, "[t]he Department feels that Mr. Everett needs to be in individual counseling to help him understand

---

1. In 1993 respondent consumed two cups of coffee and twenty-four cans of Coca Cola in one-half of a day. At that time respondent was having trouble sleeping, had bad nerves and was "implosive and explosive." In the 2002 report, his caffeine intake had reduced to two to three cups of coffee and three cans of Mountain Dew per day. Respondent was no longer having trouble sleeping and there was no indication of his prior behavioral issues.

his needs and how he can best get his needs met." Lastly, and again directly contrary to the mental health professionals that evaluated respondent, DSS concluded, respondent "currently is not receiving any therapy or medication treatment for his mental health needs. Mr. Everett needs to be involved with Cumberland County Mental Health to address his mental health needs."

On 30 May 2002, the court held a permanency planning hearing. The court found:

> 3. . . . [T]he report of an evaluation by the Cumberland County Mental Health facility of Alfred Everett has been received. There is no significant change in the abilities of Mr. Everett as found in the recent evaluation and an evaluation of 1993. Mr. Everett is reported in both evaluations to have an IQ of 65, with limited ability to read and write.
>
> . . .
>
> 7. That both children have significant emotional, behavioral and educational needs. That Mr. Everett's limitations prevent him from being a placement resource for these children. It is in the children's best interests that the relationship with their father be maintained and visitation with Mr. Everett should continue to be provided.

The court then held on this basis that "[t]he New Hanover County Department of Social Services is relieved of reunification efforts as to Mr. Everett." Prior to this time, the issue of reunification was always addressed to affect both parents, as a unit, as though the parents represented one household and one option for placement despite their separation and subsequent divorce.

Respondent appeals asserting the trial court's findings of fact were not supported by the evidence and the order did not comport with the requirements of N.C. Gen. Stat. §§ 7B-507(b) and 7B-907(b). We agree.

The purpose of a permanency planning hearing is "to develop a plan to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-907(a) (2001). In achieving this goal, the court may direct DSS to cease reunification efforts with a parent. N.C. Gen. Stat. § 7B-507 (2001). However, " '[o]ne of the essential aims, if not the essential aim, of . . . [the hearing] is to reunite the parent(s) and the child, after the child has been

taken from the custody of the parent(s).' " *In re Ekard*, 144 N.C. App. 187, 196, 547 S.E.2d 835, 841 (2001) (quoting *In re Shue*, 311 N.C. 586, 596, 319 S.E.2d 567, 573 (1984)). Accordingly, the court's authority to order the cessation of reunification efforts between a parent and a child is limited to where the court makes written findings of fact that:

(1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time;

(2) A court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances as defined in G.S. 7B-101;

(3) A court of competent jurisdiction has terminated involuntarily the parental rights of the parent to another child of the parent; or

(4) A court of competent jurisdiction has determined that: the parent has committed murder or voluntary manslaughter of another child of the parent; has aided, abetted, attempted, conspired, or solicited to commit murder or voluntary manslaughter of the child or another child of the parent; or has committed a felony assault resulting in serious bodily injury to the child or another child of the parent.

N.C. Gen. Stat. § 7B-507(b).

In the case at bar, none of the court's findings addressed the four reasons required to cease reunification efforts between respondent and his children.[2] Rather, the court explained "[t]hat Mr. Everett's limitations prevent him from being a placement resource for these

---

2. The trial court did find as fact: "2. That pursuant to Order of 18 October 2001, for 24 August 2001, the children were determined to be as to their mother, Lisa Everett, abused, neglected and dependent children and as to their father, Alfred Everett, neglected and dependent children." Although this finding of fact states, as required by N.C. Gen. Stat. § 7B-507(b)(2), that "[a] court of competent jurisdiction has determined that the parent has subjected the child to aggravated circumstances as defined in G.S. 7B-101," the order delineates the reason for the cessation of reasonable efforts was respondent's limitations and not the prior adjudication. Accordingly, although by way of delineating the history of the case, the court made a finding regarding the prior adjudication of neglect and dependency, since this finding was historical reference and not judicial reasoning, we recognize it may not now be considered as such to fulfill the N.C. Gen. Stat. § 7B-507(b) requirements.

children" due to their special needs. While this reasoning most closely relates to a finding that "[reunification] efforts clearly would be futile," the court made no such finding and therefore failed to comport with N.C. Gen. Stat. § 7B-507(b).

Even assuming *arguendo* the court intended its finding that respondent's limitations prevented reunification, the evidence in the record would not support this finding. The only action requested by DSS in their effort to reunite respondent with his children was that respondent obtain a mental health evaluation and follow the treatment recommendations. Respondent was evaluated by the mental health center, who recommended both a parenting assessment "to help clarify his ability to parent his children effectively" and "a parenting class" to help him apply better parenting skills. However, at the hearing, the DSS social worker explained that DSS chose not to follow these suggestions, instead determining, based upon their interactions with him, that his limitations would prevent him from being able to apply what he learns from a parenting class to his parenting of the children. The social worker further admitted that the *only* efforts DSS made towards reunification with respondent was "getting him to have the psychological and psychiatric evaluation." The social worker explained that because respondent cannot drive and lives far away that he wasn't included in the children's therapy, but rather "mainly the focus has been with Lisa because she's here in town;" adding that had respondent also lived in Wilmington she believed "we certainly would have probably tried to make him more a part of the case." Finally, the social worker explained that because respondent has a limited ability to read and write, and his children have special educational needs, that he would be unable to meet their needs and could not be a placement option. Accordingly, the record reveals that DSS never pursued reunification efforts with respondent, or properly evaluated his parenting capabilities. Therefore, the record would not support a finding that reunification was futile under N.C. Gen. Stat. § 7B-507(b)(1).

Finally, we note our statute requires certain findings of fact be made at permanency planning hearings. N.C. Gen. Stat. § 7B-907(b) (2001). First, the court must determine "[w]hether it is possible for the juvenile to return home immediately or within the next six months. . . ." N.C. Gen. Stat. § 7B-907(b)(1). The court must explain why, and if the juvenile will not be returning home within six months, there are other required findings. N.C. Gen. Stat. § 7B-907(b)(1)-(6). The court found that although "reunification with Lisa Everett

Simpson remains the plan but reunification is not imminent." Neither this finding nor the other findings comport with N.C. Gen. Stat. § 7B-907.

Accordingly, we reverse the order of the trial court finding it failed to comply with N.C. Gen. Stat. §§ 7B-507 and 7B-907, and the evidence does not support the trial court's conclusion of law that reunification efforts between respondent and his children should cease.

Reversed.

Judges McGEE and HUDSON concur.