644 S.E.2d 588 (2007)
In the Matter of C.M., A Minor Child.
No. COA06-1168.
Court of Appeals of North Carolina.
May 15, 2007.
E. Marshall Woodall and Duncan B. McCormick, Lillington, for petitioner Harnett County Department of Social Services.
Elizabeth Myrick Boone, Sanford, for Guardian ad Litem of the minor child.
Peter Wood, Raleigh, for respondent mother.
Hall & Hall Attorneys at Law, P.C., by Susan P. Hall, Morganton, for respondent father.
BRYANT, Judge.
Respondent mother and respondent father (respondents) appeal adjudication and disposition orders filed 23 March 2006 and 12 May 2006 adjudicating their minor child C.M.[1] to be neglected and awarding legal and physical custody of the child to Harnett County Department of Social Services (DSS). For the reasons stated below, we affirm in part and dismiss in part respondents' appeal.
In 2004, respondents and N.M. (the biological child of respondent mother) lived in the home of N.M.'s paternal grandmother. On 26 May 2004, N.M. at the age of three months was removed from respondent mother's custody due to the unsanitary condition of the home (live and dead roaches found in the child's diaper). N.M. was adjudicated to be neglected. DSS entered into a family services case plan, the mother failed to comply with such plan, and reunification efforts ceased. The mother's parental rights as to N.M. were terminated on 9 September 2005.
C.M., sibling to N.M., was born to respondents in June 2005. When C.M. was born, DSS classified the baby as being at "high safety risk." On 26 August 2006, DSS began intensive case management services, including weekly visits by the social worker. The plan required respondent mother to be supervised at all times when caring for C.M. If respondent father was not available, the paternal grandmother served as an alternative supervisor during respondent mother's care of the child. Respondents were required to obtain appropriate furniture and supplies for C.M., and respondent mother was required to continue the services from the previous case plan. Both respondents were required to participate in the Parents as Teachers program, to ensure C.M. attended all scheduled medical appointments, and to improve their parenting skills. Respondent mother arranged for C.M. to attend medical appointments and both respondents participated in the Parents as Teachers program.
Respondents did not follow through with the services recommended by the case plan and missed appointments designed to assist with vocational rehabilitation services. A social worker agreed to transport respondent father to an appointment for a psychological evaluation. When the social worker arrived, the father either was not home or did not come to the door. Respondent mother agreed to follow through with mental health appointments and to keep her social worker informed with respect to these appointments; however, she did not seek mental health treatment. Respondent father's psychological evaluation was not available at the 27 January 2006 adjudication hearing. The evaluation was completed on 31 January 2006 and indicated respondent father was mildly mentally retarded, that he had an IQ of 66, that his cognitive abilities were limited, and that he was likely to need assistance in interpreting and developing a response to new challenges. Respondent mother's psychological evaluation indicated she was mildly mentally retarded, suffered from a mood disorder, and had limited problem solving abilities.
On 2 December 2005, DSS filed a juvenile petition alleging that C.M. was a neglected juvenile. The case came on for hearing at the 27 January and 21 April 2006 Juvenile Sessions of District Court, Harnett County, the Honorable Jimmy L. Love, Jr., presiding. The trial court adjudicated C.M. to be neglected, and entered a written adjudication order on 23 March 2006. On 12 May 2006, the trial court entered a written dispositional order awarding custody to DSS, ceasing further reunification efforts, and ceasing visitation. Respondents appeal.
*592 Respondents argue the trial court erred by: (I) concluding and adjudicating C.M. to be neglected and (II) making findings of fact by incorporating the reports from the court, social workers, GAL and psychologists pursuant to N.C. Gen.Stat. § 7B-905. Respondent mother argues the trial court erred by: (III) ordering reunification efforts to cease between respondents and C.M. and (IV) ordering that visitation cease with respondents. Respondent father argues the trial court erred by: (V) failing to make findings of fact that DSS should use reasonable efforts pursuant to N.C. Gen.Stat. § 7B-507 and (VI) failing to conduct a dispositional hearing within the statutory time pursuant to N.C. Gen.Stat. § 7B-901.

I
Respondents challenge the adjudication of neglect as to C.M. Respondents argue the findings do not support the conclusion of neglect and that there was insufficient time to meet the case plan goals. We disagree.
A "neglected juvenile" is "a juvenile who does not receive proper care, supervision, or discipline from the juvenile's parent, guardian, custodian, or caretaker; or who has been abandoned; or who is not provided necessary medical care; or who is not provided necessary remedial care; or who lives in an environment injurious to the juvenile's welfare; or who has been placed for care or adoption in violation of the law." N.C. Gen. Stat. § 7B-101(15) (2005). In determining whether a juvenile is a neglected juvenile, "it is relevant whether that juvenile lives in a home where another juvenile has died as a result of suspected abuse or neglect or lives in a home where another juvenile has been subjected to abuse or neglect by an adult who regularly lives in the home." Id. In order to adjudicate a child to be neglected, the failure to provide proper care, supervision, or discipline must result in some type of physical, mental, or emotional impairment or a substantial risk of such impairment. In re Safriet, 112 N.C.App. 747, 752, 436 S.E.2d 898, 901-02 (1993). Section 7B-101(15) affords "the trial court some discretion in determining whether children are at risk for a particular kind of harm given their age and the environment in which they reside." In re McLean, 135 N.C.App. 387, 395, 521 S.E.2d 121, 126 (1999). An adjudication of neglect may be based on conduct occurring before a child's birth. In re A.B., ___ N.C.App. ___, ___, 635 S.E.2d 11, 16-17 (2006) (prior abuse and neglect of siblings and the mother's failure to comply with the orders entered in the siblings' case supported the conclusion that A.B. was neglected). In an abuse, neglect and dependency case, review is limited to the issue of whether the conclusion is supported by adequate findings of fact. In re Helms, 127 N.C.App. 505, 510, 491 S.E.2d 672, 676 (1997).
In this case, DSS presented evidence of respondents' failure to comply with the respective case plans as to N.M. and C.M. The trial court found:
8. Under a plan of reunification of [N.M.] with the respondent mother, DSS entered into a service plan with her incorporating in the plan among other things the basic recommendations of [the social worker] to include participation in the Parents as Teachers Program, parenting classes, vocational rehabilitation, mental health referrals, transportation and visitation to continue [the] parent child relationship. The mother failed to comply with terms of the agreement and the court ceased reunification efforts on February 25, 2005. Rights of the parents [as] to [N.M.] were terminated on September 9, 2005.
9. After the birth of [C.M.], DSS offered intensive case management services in order to assist the parents in maintaining the juvenile in this proceeding in their home. DSS entered into a service plan with the parents wherein continuous supervision of the child in the care of the mother was to be maintained by the father, detailed instructions were given for furniture and supplies to be obtained for the juvenile and referrals for services previously designated for the mother were continued.
10. The parents were able to obtain needed furniture and supplies for the juvenile and were first able to continue with the juvenile in their custody. DSS concerns were raised when notified that the mother *593 was missing appointments, service providers were unable to make contact with the family relative to services, the whereabouts of the mother and juvenile were unknown to the paternal grandmother (who was the person supervising placement with the mother), the parents either being missing or hiding when DSS came to assist with transportation to appointments and the father's failure to cooperate with participation in a psychological evaluation.
Respondent mother had over two years (since May 2004) to work on a case plan with DSS, she had ample time to follow through with the services designed to assist her in learning to parent. At the time of C.M.'s adjudication, respondent mother had attended only one mental health appointment and had not participated in vocational rehabilitation. The trial court found that respondent father missed a psychological evaluation despite the social worker's efforts to provide transportation. The trial court also found that service providers were unable to make contact with respondents, and that respondents delayed seeking medical attention for C.M. after the social worker telephoned respondent father and told him about the need to take C.M. to a pediatrician. The findings relating to the prior adjudication of neglect and subsequent termination of parental rights as to N.M. and respondents' failure to comply with the case plan established that C.M. was a neglected juvenile. Clear, cogent, and convincing evidence supports the conclusion that C.M. did not receive proper care and supervision and that the neglect was likely to result in physical, mental, or emotional impairment or a substantial risk of such impairment. Safriet, 112 N.C.App. at 752, 436 S.E.2d at 901-02. These assignments of error are overruled.

II
Respondents next argue the trial court erred by incorporating the court reports, psychological evaluations and GAL reports as findings of fact. Specifically, respondents contend the trial court improperly delegated its duty to make specific findings two and three at the dispositional hearing. We disagree.
A trial court's findings of fact are binding on appeal if the findings are supported by competent evidence in the record. In re J.S., 165 N.C.App. 509, 511, 598 S.E.2d 658, 660 (2004); In re Weiler, 158 N.C.App. 473, 477, 581 S.E.2d 134, 137 (2003). The standard of review that applies to an assignment challenging a dispositional finding is whether the finding is supported by competent evidence. Id.; Helms, 127 N.C.App. at 511, 491 S.E.2d at 676. "Where there is directly conflicting evidence on key issues, it is especially crucial that the trial court make its own determination as to what pertinent facts are actually established by the evidence, rather than merely reciting what the evidence may tend to show." In re Gleisner, 141 N.C.App. 475, 480, 539 S.E.2d 362, 366 (2000).
In this case, the trial court's extensive adjudicatory and dispositional findings show the trial court made its own determination with respect to the facts established by the evidence presented at trial. The trial court did not simply adopt the social worker's report, the GAL's report, and the psychological evaluations as findings. J.S. at 511, 598 S.E.2d at 660. The trial court made separate findings relating to respondents' residence at the time of the hearing and respondents' employment. The trial court made findings with respect to the circumstances surrounding N.M.'s removal from the home in May 2004, the service plan developed in that case, respondents' failure to comply with the terms of that plan, and the ultimate termination of respondent mother's parental rights to N.M. The trial court made findings with respect to the intensive case management services provided in this case, the efforts made to keep C.M. in the home, and respondents' failure to comply. In addition to incorporating the psychological evaluations, the trial court made findings with respect to respondent mother's 16 August 2004 evaluation, respondent father's January 2006 psychological evaluation, the results of those evaluations, and the ensuing recommendations. In this case, the trial court considered the written reports, incorporated the written reports, and made findings based upon the reports. The trial court also incorporated the adjudicatory findings and made numerous other *594 findings based on the evidence presented at trial. A trial court may consider written reports and make findings based on these reports so long as it does not "broadly incorporate these written reports from outside sources as its findings of fact." J.S. at 511, 598 S.E.2d at 660. This assignment of error is overruled.

III
Respondent mother argues the trial court erred by ceasing reunification efforts. The trial court may "order the cessation of reunification efforts when it finds facts based upon credible evidence presented at the hearing that support its conclusion of law to cease reunification efforts." Weiler at 477, 581 S.E.2d at 137. This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition. Id. at 477-78, 581 S.E.2d at 137; N.C. Gen.Stat. § 7B-507 (2005); N.C. Gen.Stat. § 7B-903 (2005); N.C. Gen.Stat. § 7B-905 (2005). "An abuse of discretion occurs when a trial court's ruling is so arbitrary that it could not have been the result of a reasoned decision." Chicora Country Club v. Town of Erwin, 128 N.C.App. 101, 109, 493 S.E.2d 797, 802 (1997) (quotation omitted), disc. rev. denied, 347 N.C. 670, 500 S.E.2d 84 (1998). When a trial court ceases reunification efforts with a parent, it is required to make findings of fact pursuant to N.C. Gen.Stat. § 7B-507 (b). In re Harton, 156 N.C.App. 655, 660, 577 S.E.2d 334, 337 (2003); N.C.G.S. § 7B-507(b) (2005). A trial court may cease reunification efforts upon making a finding that further efforts "would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]" N.C.G.S. § 7B-507(b)(1) (2005). The court may also cease reunification efforts upon making a finding that a "court of competent jurisdiction has terminated involuntarily the parental rights of the parent to another child of the parent[.]" N.C.G.S. § 7B-507(b)(3) (2005).
The trial court made seventeen findings of fact and concluded that continued reunification efforts would be futile.[2] In its dispositional order, the trial court found that respondents were mildly mentally retarded. Respondent mother had an IQ of 67 and did not clearly understand the reason for DSS involvement in the sibling's case. She shared characteristics with parents who have been known to abuse their children and needed ongoing support and role modeling to effectively learn parenting skills. The trial court reviewed the terms of the case plan with respect to N.M., the sibling and found that respondent mother failed to comply with the terms of that case plan. Following C.M.'s birth, DSS offered intensive case management services and entered into a service plan with respondents. The plan required respondent father to supervise respondent mother when the mother cared for C.M. Respondent mother began missing appointments, and service providers were not able to contact the family. At times, the whereabouts of C.M. and the mother were unknown to the paternal grandmother. After adjudication, respondent father completed a psychological examination which indicated he had an IQ of 66 and had limited cognitive abilities. The trial court found that there was a concern with respect to respondent father's ability to be a primary caretaker and that he would need ongoing assistance and supervision to meet C.M.'s needs and to ensure the child's safety. The trial court found that respondent father failed to seek necessary medical care despite being prompted. *595 The trial court found that there did not appear to be a person available to supervise respondents if C.M. was placed in their home or the home of a relative. The trial court's findings support that further reunification efforts would be futile. See N.C.G.S. §§ 7B-507(b)(1) and (3) (2005). This assignment of error is overruled.

IV
Respondent mother argues the trial court erred by terminating visitation with C.M. This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion. Weiler at 477-78, 581 S.E.2d at 137; N.C.G.S. §§ 7B-507, 7B-901, 7B-903, and 7B-905 (2005).
The trial court found that N.M., the older sibling, had been adjudicated neglected, a case plan had been developed, reunification efforts had ceased, and respondent mother's parental rights to N.M. had been terminated. Based upon respondents' unsuccessful parenting of N.M. and their lack of progress in working with DSS to parent C.M., the trial court ceased reunification efforts and terminated respondents' visitation with C.M. The termination of respondent mother's visitation is supported by the findings and the evidence, and the ruling is the result of a reasoned decision. Chicora Country Club at 109, 493 S.E.2d at 802. This assignment of error is overruled.

V
Respondent father argues the trial court erred by entering a temporary dispositional order on 23 March 2006. North Carolina General Statutes, Section 7B-1001(a)(3) provides that a party may appeal any "initial order of disposition and the adjudication order upon which it is based." N.C. Gen.Stat. § 7B-1001(a)(3) (2005). However, Section 7B-1001 specifically delineates the juvenile orders that may be appealed and does not provide that a party may appeal a temporary dispositional order. N.C.G.S. § 7B-1001(a) (2005); see In re Laney, 156 N.C.App. 639, 643, 577 S.E.2d 377, 379 (construing a prior version of Section 7B-1001, the Laney Court held that a party was not entitled to appeal an adjudication and temporary dispositional order in that it was not a final order), disc. review denied, 357 N.C. 459, 585 S.E.2d 762 (2003). Accordingly, respondent father is not entitled to appeal the temporary dispositional order. See Laney at 642, 577 S.E.2d at 379 ("The broad reading advocated by respondent would open the door for multiple appeals whenever adjudication orders and temporary dispositions are entered before a final disposition. The statutory language does not show that the General Assembly intended this result."). Therefore, the assignments of error challenging the temporary dispositional order are dismissed.

VI
Respondent father argues the trial court erred by failing to complete the dispositional hearing within thirty days of the adjudication. North Carolina General Statutes, Section 7B-901 provides that the dispositional hearing shall be concluded within thirty days of the conclusion of the adjudication hearing. N.C. Gen.Stat. § 7B-901 (2005). A trial court's violation of a statutory time limit is not reversible per se. In re D.M.M., ___ N.C.App. ___, ___, 633 S.E.2d 715, 717 (2006); In re J.L.K., 165 N.C.App. 311, 598 S.E.2d 387, rev. denied, 359 N.C. 68, 604 S.E.2d 314 (2004). A parent must show prejudice by a delay in conducting a hearing. In re D.J.D., 171 N.C.App. 230, 242-44, 615 S.E.2d 26, 34-35 (2005).
The trial court conducted the adjudication hearing on 27 January 2006 and the dispositional hearing on 21 April 2006. The trial court did not conduct a dispositional hearing on 27 January 2006 because the father failed to complete his court-ordered psychological examination prior to the hearing. The social worker arranged an appointment and arranged to take respondent father to the appointment. When she arrived to pick him up, he was not at the home. For this reason, the psychological evaluation was not available on 27 January 2006. The trial court continued the dispositional hearing based on its need to review the psychological evaluation. See N.C.G.S. § 7B-803 (2005) ("The court may, for good cause, continue the hearing for as long as is reasonably required to receive additional evidence, reports, or assessments *596 that the court has requested, or other information needed in the best interests of the juvenile[.]"). The case was scheduled to be heard at the 23-24 March 2006 Juvenile Session of District Court, Harnett County. At that time, respondents moved for a continuance. The trial court entered a written continuance order, noting that DSS asked the trial court to continue the existing temporary dispositional order and that the parties did not object to this request. The trial court conducted the adjudication hearing within the sixty-day deadline established by N.C.G.S. § 7B-801(c) and entered the adjudication order on 23 March 2006. The dispositional order was entered on 12 May 2006, less than thirty days after the 21 April 2006 dispositional hearing. N.C. Gen.Stat. § 7B-905(a) (2005). The trial court did not cease reunification efforts until the 21 April hearing. The dispositional hearing was completed eighty-four days after the conclusion of the adjudication hearing and fifty-four days after the deadline established by N.C. Gen. Stat. § 7B-901. N.C.G.S. § 7B-901 (2005)[3]. Here, delay was due in part to respondent father's failure to complete his psychological evaluation and respondents' joint motion for a continuance. Under these circumstances, respondent father has not established prejudice. This assignment of error is overruled.
Affirmed in Part; Dismissed in Part.
Judges STEELMAN and LEVINSON concur.
NOTES
[1] In order to protect the identity of the juvenile, we use initials throughout this opinion.
[2] We note this case is distinguishable from In re Everett, 161 N.C.App. 475, 588 S.E.2d 579 (2003). In Everett, the trial court did not make any of the findings required by N.C. Gen.Stat. § 7B-507(b). Id. at 479-80, 588 S.E.2d at 582-83. The trial court found that Mr. Everett had an IQ of 65 with a limited ability to read, that the children had special needs, and that Mr. Everett's limitations prevented him from being a placement resource. Id. at 478, 588 S.E.2d at 582. The Court noted that DSS did not follow the mental health evaluation recommendations. DSS merely arranged for a psychological and psychiatric evaluation. DSS did not pursue reunification efforts or properly evaluate Mr. Everett's parenting abilities. Id. at 480, 588 S.E.2d at 583.
[3] In considering challenges to the late entry of court orders, this Court has not found prejudice in cases involving this short a delay. In re D.R., 172 N.C.App. 300, 616 S.E.2d 300 (2005) (no prejudicial error where termination order was entered sixty-nine days after hearing); In re K.D.L., 176 N.C.App. 261, 267, 627 S.E.2d 221, 224 (2006) (no prejudicial error where termination order was entered fifty days after hearing); In re A.D.L., 169 N.C.App. 701, 705-06, 612 S.E.2d 639, 642-43 (no prejudicial error where termination order was filed forty-six days after hearing), rev. denied, 359 N.C. 852, 619 S.E.2d 402 (2005); J.L.K., 165 N.C.App. at 314-15, 598 S.E.2d at 390 (no prejudicial error where termination order was entered eighty-nine days after date of hearing). In contrast, this Court has repeatedly reversed cases in which an order was entered more than six months after the hearing date. D.M.M., ___ N.C.App. at ___, 633 S.E.2d at 718-19 (prejudicial error existed where the court conducted a hearing on a termination petition more than a year after filing petition and entered order more than seven months after date of hearing).