MURPHY, Judge.
Respondent-Mother ("Florence")[1] appeals from an order ceasing reunification efforts with her minor child K.M. ("Kristin") and terminating the guardianship of Kristin's guardian. Kristin's father ("Keith") is not a party to this appeal. After careful consideration, we affirm the trial court's order.
BACKGROUND
On 22 February 2012, Florence sent Kristin to live with her father Keith. On 27 September 2012, the Johnston County Department of Social Services ("DSS") received a report that Keith was incarcerated and had been accused of sexually abusing another child. Keith had left Kristin in the care of a paternal great-grandfather. Due to concerns regarding the adequacy of this home and caregiver, DSS did a kinship assessment and moved Kristin into the care of another relative, Mrs. Morgan.
On 8 March 2013, DSS filed a juvenile petition alleging Kristin to be a neglected and dependent juvenile. Following a 17 April 2013 hearing, the trial court entered an order on 22 May 2013 adjudicating Kristin to be a neglected and dependent juvenile, placing Kristin in the custody of Mrs. Morgan, and ordering Florence and Keith to cooperate with DSS and follow any and all recommendations. After a 10 July 2013 review hearing, the trial court entered a 19 August 2013 order ceasing reunification efforts with Keith but continuing reunification efforts with Florence. The trial court held a permanency planning hearing on 31 July 2013, after which the court entered an order establishing a permanent plan of custody/guardianship with a relative.
Following a 28 August 2013 permanency planning hearing, the trial court entered an order that ceased reunification efforts as to both parents, changed the permanent plan to guardianship, and appointed Mrs. Morgan as Kristin's guardian. The trial court held another permanency planning hearing on 2 October 2013. On 13 November 2013, the trial court entered an order finalizing the permanent plan of guardianship and suspending further reviews.
Two years later, in December 2015, Mrs. Morgan (Kristin's guardian) contacted Florence, who was now living in Missouri. They discussed the possibility of Florence resuming custody of Kristin, as Kristin had been displaying behavioral problems that Mrs. Morgan could not control. On 8 February 2016, Florence filed a motion for review in the trial court, requesting that custody of Kristin be returned to her. Following the permanency planning hearing, the trial court entered an order on 15 February 2017 terminating the guardianship of Mrs. Morgan, placing Kristin in the custody of DSS, and establishing a primary permanent plan of guardianship with a court-approved caretaker and a secondary plan of custody or guardianship with a relative. Florence appeals this order.
On appeal, Florence's primary arguments are that the trial court's findings were unsupported by the evidence at the hearing, and that the trial court abused its discretion by not requiring DSS to continue making reunification efforts. We disagree.
STANDARD OF REVIEW
This Court reviews orders ceasing reunification efforts "to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." In re C.M. , 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007). "An abuse of discretion occurs when the court's ruling is so arbitrary that it could not have been the result of a reasoned decision." Id . When a trial court ceases reunification efforts with a parent, it is required to make "written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety." See N.C.G.S. § 7B-906.2 (2017). Furthermore, "[a]t any permanency planning hearing where the juvenile is not placed with a parent, the court shall ... make written findings regarding ... why such placement is not in the juvenile's best interests." See N.C.G.S. § 7B-906.1(e)(1) (2017).
FINDINGS CHALLENGED ON APPEAL
Finding 3
Florence first argues that that several statements in finding number three are unsupported by the evidence.
3. [DSS] has provided the following services towards reunification: ... [DSS] had previously attempted to work with the mother to address issues of parenting, substance abuse, domestic violence, individualized counseling and stable housing and employment.
....
The court determines that [DSS] is relieved of reasonable efforts towards reunification as ... [i]t is futile and inconsistent with the juvenile's health, safety and need for a permanent home within a reasonable period of time because ... [n]either parent has resolved the protective issues which led to the juvenile's removal.
Florence argues that the part of finding number three which states "[DSS] had previously attempted to work with the mother to address issues of parenting, substance abuse, domestic violence, [and] individualized counseling" is unsupported by the evidence. Florence contends that "[t]here was no evidence at any stage of this proceeding that [she] had any substance use issues, or that her parenting skills were inadequate," or that "she needed individual therapy." She misconstrues the import of this finding. What this finding says is that DSS attempted to work with Florence to address these issues, and Florence does not dispute that there was evidence of DSS doing so. However, although listed as a finding of fact, the part of finding number three that relieved DSS of making efforts toward reunification on the grounds that it would be "futile and inconsistent with the juvenile's health [and] safety" is more appropriately reviewed as a conclusion of law. Therefore, we disregard this part of finding number three in our analysis.
Finding 5
Florence also claims that several statements in finding number five are unsupported by the evidence.
5. Based on the evidence presented, the court determines that ... it is not possible for the juvenile(s) to return home immediately or within six months because it is contrary to the juvenile's welfare and that the court determines that the juvenile(s) does not have a parent, guardian or custodian who is a fit and proper person to have the care, custody and control of the juvenile(s), as: Neither parent has resolved the protective issues which led to the juvenile's removal.... The mother has housing in Springfield, MO, with her fiancée (sic), who is a six time convicted felon. Although [the mother's] home has been approved by [the Missouri Department of Social Services], she has not resolved the previously identified risk issues. The mother has not seen the juvenile in over four years, and although she has repeatedly indicated that she believed there was a no contact order, she never addressed the same in court or requested a modification in those four years. The mother has not appeared in court for this matter since May of 2016. The Court further finds that although the mother claims she cannot come because of the distance being over 1700 miles, it is actually closer to only 1000 miles. Furthermore, the mother has indicated that she was planning to come in February, when there is no court scheduled. The mother indicates that between December 6, 2016 and this court date, she has completed the domestic violence class; however, her own exhibit indicates that it is a 52 week program, making that completion impossible in the time frame the mother provided. Furthermore, the mother has expressed a desire to participate in an online parenting program; however, the Court and [DSS] has previously stressed to the mother to attend actual in person parenting to receive the additional benefit of that personal interaction. The mother indicated she began some in person classes but just didn't like it so she stopped. This child is a North Carolina child, and it would not be in her best interest to uproot her and place her multiple states away with a mother she has not seen for more than half of her life, and whose participation in the parenting plan is questionable at best.
Her brief first identifies the following statements-"she believed there was a no contact order in place" and "[t]he mother has not appeared in court for this matter since May of 2016[.]" However, beyond identifying these two statements in the argument section of her brief, she advances no argument as to why they are unsupported by the evidence. Therefore, they are binding on appeal. Florence also challenges the statement "although the mother claims she cannot come because of the distance being over 1700 miles, it is actually closer to only 1000 miles." Our review of the transcript reveals that the trial court took judicial notice of this fact. Therefore, Florence fails to demonstrate that this part of finding number five is erroneous or unsupported by evidence.
Florence next challenges the finding that Kristin has not seen her mother for more than half her life. She points to evidence which shows that a video visitation occurred in December 2016. However, the basic premise of the finding is supported. During the 2016 hearings on this matter, Florence acknowledged that she dropped Kristin off with Keith in 2012 because she was living in a shelter, and the last time she saw Kristin in-person was at a court proceeding in 2013. Kristin was eight years old at the time of these hearings. Therefore, we decline to disregard this part of finding number five.
Florence further maintains that the trial court's determination that "she has not resolved the previously identified risk issues" is unsupported by the evidence. This is a statement of "ultimate fact"[2] and it is supported by the trial court's other factual findings which are supported by the evidence (i.e. DSS worked with Florence to address issues of domestic violence and parenting, and Florence failed to attend classes to address these issues). However, we are unable to determine whether the statement "neither parent has resolved the protective issues which led to the juvenile's removal" is supported by the evidence (this statement is also part of finding number three). The order does not specifically identify any "protective issues," nor does it incorporate any earlier orders that may have better described the "protective issues." Therefore, we disregard this portion finding number five.
Finding 16
Florence next challenges finding number sixteen.
16. The Court finds that since the last hearing in this matter, visitations ... have not gone well, as: ... [t]he mother has had some telephone contact, as well as video contact with the juvenile, but no in person visitation. No problems with the actual visitation have occurred.
While this finding is not necessarily internally inconsistent, as Florence contends, we agree that the latter part of the statement does not support the conclusion that "visitations have not gone well." We disregard the finding that "visitations have not gone well" in our analysis.
ANALYSIS
The remaining unchallenged findings nonetheless support the trial court's conclusion that reunification would be "futile and inconsistent with the juvenile's health [and] safety[.]" Under N.C.G.S. § 7B-906.2(b), when a trial court determines that reunification would be unsuccessful, they are no longer obligated to include "reunification" as part of the juvenile's primary or secondary plan.
(b) At any permanency planning hearing, the court shall adopt concurrent permanent plans and shall identify the primary plan and secondary plan. Reunification shall remain a primary or secondary plan unless the court made findings under G.S. 7B-901(c) or makes written findings that reunification efforts clearly would be unsuccessful or would be inconsistent with the juvenile's health or safety....
N.C.G.S. § 7B-906.2 (2017).
Here the evidence demonstrated that Florence had not made adequate progress on her case plan. She did not remain available to the trial court, and had not been present for any hearings since May 2016. Even though Florence had the ability to visit with Kristin, the last time she saw her in person was in 2013. Furthermore, while Florence's living situation had become more stable since 2012, she testified that she was currently living with and engaged to a six-time convicted felon (for burglary) that had been in drug court for the past three years.
Florence last argues that the trial court abused its discretion in determining that it was in Kristin's best interests to relieve DSS of making reasonable efforts toward reunification with her mother. We disagree. N.C.G.S. § 7B-906.1 provides that:
(e) At any permanency planning hearing where the juvenile is not placed with a parent, the court shall additionally consider the following criteria and make written findings regarding those that are relevant:
(1) Whether it is possible for the juvenile to be placed with a parent within the next six months and, if not, why such placement is not in the juvenile's best interests....
N.C.G.S. § 7B-906.1(e)(1) (2017).
Florence contends that the trial court ignored evidence that Kristin's behavioral issues were a result of her "feelings of rejection and abandonment because she was not with her parents." In addition to discounting her own role in cultivating Kristin's feelings of rejection and abandonment, Florence ignores other sufficient evidence demonstrating her "lack of success" as a parent, such as when she stopped going to parenting classes. As Kristin was not placed in the custody of Florence or Keith, N.C.G.S. § 7B-906.1(e)(1) required the trial court to make findings regarding why such placement was not in Kristin's best interests. The trial court made these findings, and they were supported by evidence. Therefore, because credible evidence supported the trial court's conclusion that reunification would be unsuccessful and not in the best interest of Kristin, we conclude that the 15 February 2017 order that relieved DSS of making further efforts toward reunification was the result of a reasoned decision. That order, hereby is, affirmed.
AFFIRMED.
Report per Rule 30(e).
Judges HUNTER, JR. and DILLON concur.

Pseudonyms are used to protect the identity of the juvenile and for ease of reading. See N.C. R. App. P. 3.1(b) (2017).

Ultimate findings of fact are those findings "reached by processes of logical reasoning from the evidentiary facts" found by the trial court. In re Anderson , 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002) (internal quotation marks and citation omitted).