An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-88
NORTH CAROLINA COURT OF APPEALS

Filed: 3 June 2014

IN THE MATTER OF:                    McDowell County
O.B., K.B., R.B., D.S.               Nos. 12 JT 42-45


Appeal by respondent from orders entered 29 October 2013 by Judge Robert K. Martelle in McDowell County District Court. Heard in the Court of Appeals 5 May 2014.

*Megan N. Silver for petitioner-appellee McDowell County Department of Social Services.*

*Parker Poe Adams & Bernstein LLP, by Ashley A. Edwards, and Womble Carlyle Sandridge & Rice, LLP, by Hunter S. Edwards, for petitioner-appellee guardian ad litem.*

*Ewing Law Firm, P.C., by Robert W. Ewing, for respondent-appellant father.*

DILLON, Judge.

Respondent-father appeals from the order terminating his parental rights as to his minor children O.B., K.B., and R.B. (collectively, "the juveniles") in 12 JT 42-43, 45. He also purports to appeal from the order in 12 JT 44 terminating the parental rights of the parents of D.S., the juveniles' half-

brother. Respondent-father concedes, however, he is not a party to the action in 12 JT 44 and, therefore, lacks standing to appeal. Accordingly, we dismiss the appeal in 12 JT 44. Because the district court did not abuse its discretion under N.C. Gen. Stat. § 7B-1110 (2013) in determining that termination of respondent-father's parental rights was in the juveniles' best interests, we affirm the order as it relates to 12 JT 42, 12 JT 43 and 12 JT 45.

In May 2012, the McDowell County Department of Social Services (DSS) obtained non-secure custody of the juveniles and filed petitions alleging that they were abused, neglected, and dependent. The petitions cited the parents' history of domestic violence as well as their ongoing substance abuse, which resulted in all three juveniles testing positive for amphetamine and methamphetamine in May 2012.[1] The district court adjudicated the juveniles neglected on 11 September 2012. The court ceased reunification efforts on 3 June 2013, and changed the juveniles' permanent plan from reunification to adoption.

DSS filed motions for termination of respondent-father's parental rights on 17 June 2013. The district court heard the motions on 15 August and 26 September 2013. In its order

---

[1]R.B. also tested positive for amphetamine and methamphetamine at the time of her premature birth in 2010.

entered 29 October 2013, the district court found grounds to terminate respondent-father's parental rights based on (1) neglect, (2) failure to make reasonable progress, and (3) failure to pay a reasonable portion of the juveniles' cost of care. N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3) (2013).[2] At disposition, the court found and concluded that terminating respondent-father's parental rights was in the best interests of each child. N.C. Gen. Stat. § 7B-1110(a) (2013). Respondent-father filed timely notice of appeal.[3]

On appeal, respondent-father claims that the trial court abused its discretion in electing to terminate his parental rights. He does not suggest that the court failed to consider the dispositional factors set forth in N.C. Gen. Stat. § 7B-1111(a) (2013). Rather, respondent-father contends that "there was no need to terminate [his] parental rights[,]" because the court could have placed the juveniles in the custody of their maternal grandmother, Ms. B.

Once the district court has adjudicated the existence of one or more grounds for termination of parental rights under

---

[2] The court adjudicated grounds for termination of respondent-mother's parental rights on the same grounds, as well as for willful abandonment under N.C. Gen. Stat. § 7B-1111(a)(7) (2013).

[3] Although the order also terminated the parental rights of respondent-mother, she has not appealed.

N.C. Gen. Stat. § 7B-1111(a), its selection of an appropriate disposition consistent with the juvenile's best interests is discretionary. *In re Montgomery*, 311 N.C. 101, 110, 316 S.E.2d 246, 252 (1984). In exercising this discretion, however, the court must

> consider the following criteria and make written findings regarding the following that are relevant:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.
>
> (3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
>
> (4) The bond between the juvenile and the parent.
>
> (5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
>
> (6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a). A court's dispositional findings are binding on appeal insofar as they are supported by competent evidence, *see In re C.M.*, 183 N.C. App. 207, 212, 644 S.E.2d 588, 593 (2007), or not specifically challenged by the appellant, *see Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d

729, 731 (1991). We find no merit to respondent-father's claim. The district court made detailed findings regarding Ms. B.'s request to assume custody of the juveniles and explaining why the court deemed termination of respondent-father's parental rights a superior option:

> a. The minor children are four (4), three (3) and two (2) years old.
>
> . . . .
>
> g. There is a substantial bond between the minor children and their current caregivers. The minor children have been placed with their current caregivers for nearly seven (7) months. The current caregivers wish to adopt the minor children and their half-sibling[, D.S]. The minor children are thriving in this placement and their behavior has improved.
>
> . . . .
>
> i. The likelihood the minor children will be adopted is high.
>
> j. The minor child [K.B.] and his half sibling, [D.S.] receive therapy from Caroline Sigmon, MSW, LCSW. She is a Trauma Focused Clinician . . . [and] Child and Family Therapist. . . . Ms. Sigmon recommends the minor children remain in the care of their prospective adoptive parents.
>
> . . . .
>
> n. Removal from the home of the prospective adoptive parents after the traumatic events the minor children have experienced would be extremely detrimental to the minor

children's wellbeing and emotional and cognitive development.

o. The Court considered [Ms. B.]'s desire to have placement of the minor children. . . . A home study was completed by [DSS] on Ms. [B.]'s home on May 16, 2013 . . . .

p. The home study of Ms. [B.]'s home was denied. Ms. [B] has been involved in this case since the family was receiving in-home/case management services in 2011. . . . A meeting was held at [DSS] on May 29, 2012 (the day before the petition requesting non-secure custody was filed) and Ms. [B.] was not willing to serve as placement for the minor children.

q. . . . Ms. [B.] did not wish to become a licensed foster parent because she was working second shift . . . and did not feel she could serve as placement for the minor children due to her work schedule and lack of space (she had a two (2) bedroom home).

r. Ms. [B.] began working first shift in summer 2012, but she did not request placement of the minor children. . . .

s. Ms. [B.] waited over one year to have an addition added on to her home to make room for the minor children. . . . The Respondent Father has building skills and could have assisted Ms. [B.] with this project long before May 2013. . . .

. . . .

u. Ms. [B.] only visited the minor children five (5) to six (6) times while they have been in foster care in the last sixteen (16) months. She has never requested additional visitation . . . .

. . . .

w. When Ms. [B]. finally formally requested the minor children be placed with her in May 2013, she stated she was shocked when she learned in court at the permanency planning hearing in April 2013 that the Respondent Father had not done what was expected of him. She attended a [Child and Family Team meeting] on January 4, 2013 where the Respondent Father's lack of progress on his case plan was discussed. Ms. [B.] did not request placement of the minor children but has been fully aware the Respondent Father was not complying with his case plan . . . .

. . . .

z. As of the date of this hearing, the Court does not know whether Ms. [B] can properly care for the minor children and she has done too little, too late to show the Court she is willing and able to care for the minor children. The minor children are thriving in their current placement and it would not be in their best interest to remove them from their current placement.

aa. . . . [I]f the Respondent Parents' rights are not terminated, the minor children will likely be separated from [D.S., who] has expressed the importance of living with his brothers and sister to Ms. Sigmon . . . .

bb. Ms. [B.] is not related to the minor children's half-sibling, [D.S.] . . . . The prospective adoptive parents wish to adopt all four (4) minor children. Separation would be detrimental to the minor children.

The court also incorporated by reference the report of the juveniles' guardian ad litem, who agreed with DSS that

terminating the rights of respondent-father was in the juveniles' best interests. Respondent-father does not except to the court's findings; rather, he merely disagrees with its assessment of the juveniles' best interests. Because we find no abuse of discretion by the court, we affirm the termination order as to 12 JT 42-43, 45. We dismiss the appeal as to 12 JT 44.

AFFIRMED in part, DISMISSED in part.

Judges BRYANT and STEPHENS concur.

Report per Rule 30(e).