An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA24-995

Filed 16 July 2025

Wake County, No. 23JA003306-910

IN THE MATTER OF: D.H.

Appeal by respondent-appellant mother from order entered 19 August 2024 by Judge Ashleigh S. Parker in District Court, Wake County. Heard in the Court of Appeals 10 June 2025.

> *Deputy County Attorney Mary Boyce Wells and Assistant County Attorney David F. Hord, IV for petitioner-appellee Wake County Health and Human Services.*
>
> *Womble Bond Dickinson (US) LLP, by Mason E. Freeman and Erin Epley, for the guardian ad litem.*
>
> *Robert W. Ewing for respondent-appellant mother.*

STROUD, Judge.

Mother appeals from the trial court's permanency planning order and contends it must be reversed since "reunification remained as the primary permanent plan" and the trial court "failed to make the required findings of fact under" North Carolina General Statute Section 7B-906.1(d)(3). Mother also argues the trial court "failed to adopt an appropriate visitation plan" as it delegated visitation at the discretion of the father. Because reunification was achieved when the trial court granted custody of

David to his father, the trial court's findings of fact were sufficient. The trial court also set out the specific frequency and length of visitation for Mother, to be supervised by Time Together, and did not grant David's father excessive discretion over Mother's visitation. We affirm the trial court's order.

## I.  Background

David[1] was born in March 2021 in Wake County, North Carolina. On 5 July 2023, Mother and David's father, who is not a party to this appeal, entered into a temporary custody order which "grant[ed] the parents 50/50 custody" of David in file number 23 CVD 13547.[2] Mother has another child, J.C.,[3] who was in the custody of the Wake County Department of Health and Human Services ("WCDHHS") after being adjudicated dependent and neglected in September 2023 for "substance use and mental health concerns of" Mother.

Throughout 2023, Child Protective Services ("CPS") received multiple reports involving Mother's care of David. In a May 2023 report, Mother allegedly "attempted suicide in the presence of her children and [was] subsequently hospitalized" and in

---

[1] A pseudonym is used to protect the identity of the minor child.

[2] An "Order Administratively Closing [the] Case" in the Chapter 50 custody case, 23 CVD 13547, was entered 21 February 2024 "[p]ursuant to N.C.G.S. 7B-200(c)(1)" which stayed the matter and "removed [the] case from the trial docket and placed [it] as a closed file." The order provided "[t]he issue of custody is hereby closed WITHOUT prejudice to either party to file a motion to reopen the case when the stay is lifted."

[3] A pseudonym is used to protect the identity of the minor child. Although the permanency planning order on appeal only involves David, relevant background information as to J.C. will also be discussed in this opinion. David and J.C. do not share the same father.

July 2023 there was a report involving David's health. On 24 August 2023, CPS received a report "alleging that . . . [M]other was observed to have slurred speech and an unsteady gait and appeared to be under the influence or intoxicated." Mother was hospitalized overnight because of her intoxication. Neither David nor J.C. were home with Mother when the behaviors were observed, but J.C. "returned to the home later that day." The next day, WCDHHS visited Mother's home and "the social worker observed . . . [M]other to be unresponsive and called emergency services to respond at the residence." Emergency services "were able to wake up" Mother and she was not hospitalized, but during the interview with WCDHHS Mother "continue[d] to have slurred speech, stumble[d] and needed the social worker to repeat questions asked of her."

On 25 October 2023, a juvenile petition was filed alleging David was a neglected juvenile since he was in a "living environment that [was] injurious to [his] welfare." The allegations in the petition arose from a CPS report from 23 October 2023 that stated Mother took David from his father's care when David was supposed to be "in the physical care of his father." David was placed in nonsecure custody that same day.

The trial court held the adjudication and disposition hearing on 19 February 2024 and entered an order on 26 March 2024. The adjudication and disposition order outlined the facts as stated above and concluded David was neglected as defined by North Carolina General Statute Section 7B-101(15). David was placed in the custody

of WCDHHS and "[t]rial home placement with the father [was] authorized so long as he resides with the paternal grandparents." WCDHHS was ordered to "continue to make reasonable efforts to eliminate the need for placement of [David] outside the home." Mother was also required to "enter into and comply with the Out of Home Family Services Agreement" which included parenting classes; maintaining safe housing; maintaining employment; "[f]ollow[ing] all recommendations of her substance abuse assessment;" "[c]omplet[ing] a psychological evaluation and follow[ing] all recommendations;" "[c]omplet[ing] domestic violence education[;]" and maintaining regular contact with the social worker assigned to the case and notifying WCDHHS of any changes in circumstances. Mother was allowed visitation for a minimum of two hours per week, supervised by WCDHHS and was to "contact the social worker at least 24 hours prior to the scheduled visit to confirm her attendance[.]" The first permanency planning hearing was then set for 17 April 2024.

The trial court held the first permanency planning hearing on 17 April 2024 and entered an order on 17 May 2024. The trial court noted Mother "revoked her consent for WC[D]HHS and the GAL to speak with her mental health providers, which also led to WC[D]HHS being unable to share her evaluation with her providers." Although Mother reported she was attending counseling, the court could not "deem that she is an appropriate person to move to unsupervised visitations without having competent evidence presented regarding her mental health treatment." The court stated the "trial home placement" with David's father "has

gone well" and that David's "needs are being met in his father's care." David was ordered to remain in the custody of WCDHHS but continued to authorize the trial home placement of David with his father "so long as he resides with the paternal grandparents." The primary plan for David was reunification and the secondary plan was adoption. Mother was ordered to continue to follow her case plan and was granted supervised visitation.

A second permanency planning hearing was held 17 July 2024 and a Juvenile Order was entered 19 August 2024. The trial court outlined Mother's recurring issues involving missed visitations or calls with David that resulted from Mother's mental health issues. Mother "missed a medication management appointment and a Child and Family Team meeting during the week of [the] hearing." The trial court stated "Mother has numerous mental health diagnoses and has been prescribed several different medications. It does not appear to this [c]ourt that . . . [M]other's mental health treatment is sufficient for her needs." The trial court ultimately concluded Mother "is unfit and has acted in a manner inconsistent with her constitutionally protected parental status."

The trial court ordered David be "placed i[n] the sole legal and physical custody of his father" and relieved WCDHHS, the GAL, and the attorneys from responsibility in the case. Mother was granted a minimum of one hour of professionally supervised visitation every other week. Mother and David's father were "authorized to increase the duration and frequency of . . . [M]other's professionally supervised visitations."

To facilitate the professionally supervised visitation, Mother and David's father were to "contact Time Together independently to discuss how to facilitate a visitation schedule as soon as possible." Mother filed written notice of appeal of the Juvenile Order on 26 August 2024 and amended notice of appeal on 28 August 2024.

## II.    Analysis

Mother argues (1) the Juvenile Order "which relieved [WC]DHHS of providing reunification efforts with . . . [M]other . . . must be reversed since reunification remained as the primary permanent plan and because the trial court failed to make the required findings of fact under" North Carolina General Statute Section 7B-906.1(d)(3) and (2) "the trial court failed to adopt an appropriate visitation plan when it delegated the dates and times of visitation to the discretion of David's father." We disagree and affirm the Juvenile Order.

## A. Reunification

Mother argues the permanency planning order relieving WCDHHS of providing reunification efforts with Mother must be reversed "since reunification remained as the primary permanent plan and because the trial court failed to make the required findings of fact under" North Carolina General Statute Section 7B-906.1(d)(3).

> Our review of a permanency planning order is limited to whether there is competent evidence in the record to support the findings of fact and whether the findings support the conclusions of law. The trial court's findings of fact are conclusive on appeal if supported by any competent

evidence. The trial court's dispositional choices—including the decision to eliminate reunification from the permanent plan—are reviewed only for abuse of discretion, as those decisions are based upon the trial court's assessment of the child's best interests.

*In re L.R.L.B.*, 377 N.C. 311, 315, 857 S.E.2d 105, 111 (2021) (citations, quotations marks, and brackets omitted).

North Carolina General Statute Section 7B-906.1(d)(3) states

[a]t each hearing, the court shall consider the following criteria and make written findings regarding those that are relevant:

. . . .

(3) Whether efforts to reunite the juvenile with *either parent* clearly would be unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable period of time. The court shall consider efforts to reunite regardless of whether the juvenile resided with the parent, guardian, or custodian at the time of removal.

N.C. Gen. Stat. § 7B-906.1(d)(3) (2023) (emphasis added). "Reunification" is defined as "[p]lacement of the juvenile in the home of *either parent* or placement of the juvenile in the home of a guardian or custodian from whose home the child was removed by court order." N.C. Gen. Stat. § 7B-101(18c) (2023) (emphasis added).

In the May 2024 permanency planning order, the primary plan was ordered to be reunification and the secondary plan was adoption. Then, in the Juvenile Order on appeal, David was "placed i[n] the sole legal and physical custody of his father,"

Mother was deemed an unfit parent, and WCDHHS, the GAL, and the attorneys involved in the case were "relieved of further responsibility." Thus, under the plain meaning of North Carolina General Statute Section 7B-101(18c), reunification had been accomplished since David was placed "in the home of either parent[,]" here, his father. *See id.*

Mother cites to *In re K.L.*, 254 N.C. App. 269, 274, 802 S.E.2d 588, 592 (2017), to support her argument "[t]he trial court [was] required to make findings of fact on whether efforts to reunite [David] with either parent clearly would be unsuccessful or inconsistent with [David's] health or safety and need for a safe, permanent home within a reasonable period of time[.]" But *In re K.L.* involved a case where the permanency planning order at issue gave "legal and physical custody of [the children to] Ms. E[,]" who was the children's "married adult sibling[.]" *Id.* at 271-72, 802 S.E.2d at 590-91. *In re K.L.* recognized that

> [t]o subsequently *remove reunification as a concurrent permanent plan* requires properly admitted evidence to support findings of fact to allow the court to conclude "efforts to reunite the juvenile with either parent clearly would be futile or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable period of time."

*Id.* at 275, 802 S.E.2d at 592 (emphasis added) (citation and quotation marks omitted). Thus, unlike this case, *In re K.L.* involved a case where reunification was not achieved since custody was granted to the children's sibling, not a parent. *See id.*, *see also* N.C. Gen. Stat. § 7B-101(18c). And *In re K.L.* also recognizes that not all

criteria listed in North Carolina General Statute Section 7B-906.1(d)(3) are applicable to every case. *See id*. ("The remaining statutory factors in N.C. Gen. Stat. § 7B-906.1(d) are inapplicable to the present case."). It would be illogical to require the trial court to make findings as to how "efforts to reunite the juvenile with either parent clearly would be unsuccessful or inconsistent with the juvenile's health or safety and need for a safe, permanent home within a reasonable period of time" when David was, in fact, reunited with a parent and reunification was achieved. *In re K.L.* is inapposite to this case; the trial court was not required to make a finding under North Carolina General Statute Section 7B-906.1(d)(3) since reunification was achieved with David's father and Mother's argument is overruled.

**B. Visitation**

Mother also argues "[t]he trial court failed to adopt an appropriate visitation plan when it delegated the dates and times of visitation to the discretion of David's father." We disagree.

"This Court reviews the trial court's dispositional orders of visitation for an abuse of discretion." *In re C.M.*, 183 N.C. App. 207, 215, 644 S.E.2d 588, 595 (2007) (citations omitted). North Carolina General Statute Section 7B-905.1(a) states "[a]n order that removes custody of a juvenile from a parent . . . or that continues the juvenile's placement outside the home shall provide for visitation that is in the best interests of the juvenile consistent with the juvenile's health and safety, including no visitation." N.C. Gen. Stat. § 7B-905.1(a) (2023). Further, North Carolina General

Statute Section 7B-905.1(c) states

> [i]f the juvenile is placed or continued in the custody or
> guardianship of a relative or other suitable person, any
> order providing for visitation shall specify the minimum
> frequency and length of the visits and whether the visits
> shall be supervised. The court may authorize additional
> visitation as agreed upon by the respondent and custodian
> or guardian.

N.C. Gen. Stat. § 7B-905.1(c) (2023).

In *In re Stancil*, this Court explained that setting visitation rights is a judicial

function:

> When the custody of a child is awarded by the court, it is
> the exercise of a judicial function. In like manner, when
> visitation rights are awarded, it is the exercise of a judicial
> function. We do not think that the exercise of this judicial
> function may be properly delegated by the court to the
> custodian of the child. Usually those who are involved in a
> controversy over the custody of a child have been unable to
> come to a satisfactory mutual agreement concerning
> custody and visitation rights. To give the custodian of the
> child authority to decide when, where and under what
> circumstances a parent may visit his or her child could
> result in a complete denial of the right and in any event
> would be delegating a judicial function to the custodian.

10 N.C. App. 545, 552, 179 S.E.2d 844, 849 (1971) (citation omitted).

Here, as to visitation, the trial court ordered:

> 3. . . . [M]other may visit [David] for a minimum of one
> hour, every other week. . . . [M]other's visitation shall be
> professionally supervised.
>
> 4. Each parent shall be responsible for paying the cost of
> one professionally supervised visitation per month. Each
> parent is responsible for their own intake supervision fee.

> Each parent shall contact Time Together[4] independently to discuss how to facilitate a visitation schedule as soon as possible.
>
> 5. The parties are authorized to increase the duration and frequency of . . . [M]other's professionally supervised visitations. . . . [M]other shall bear the costs of additional visitations.
>
> 6. . . . [M]other is authorized to have phone calls with [David] on Mondays and Wednesdays between 6:30 p.m. and 6:45 p.m., monitored by the father or his designee. The phone calls do not have to last the entire 15 minutes. All other communication between . . . [M]other and [the] father shall be via email or text message and shall be limited to matters directly concerning [David].

Mother only challenges the part of number 4 that requires "[e]ach parent shall contact Time Together independently to discuss how to facilitate a visitation schedule as soon as possible."

Mother argues this part of the Juvenile Order improperly gives the father discretion over visitation. She contends that "[t]aking into account the ill will between David's parents, the trial court erred by allowing [David's father] the discretion to discuss [Mother's] visitation schedule with the third-party supervision in order to establish the date and times of [Mother's] visitation." However, she also argues that subsection (c) of North Carolina General Statute Section 7B-905.1, which required that the trial court "specify the minimum frequency and length of the visits[,]" N.C. Gen. Stat. § 7B-905.1(c), is inapplicable to this case since it applies to

---

[4] Time Together is a supervised visitation service in Wake County.

a "relative or other suitable person" and not a "parent," which is a term normally used to apply to persons other than a parent in the Juvenile Code.

We recognize that the term "relative" is defined by North Carolina General Statute Section 7B-101(18a) as "[a]n individual directly related to the juvenile by blood, marriage, or adoption, including, but not limited to, a grandparent, sibling, aunt, or uncle." N.C. Gen. Stat. § 7B-101 (18a) (2023). David's father is certainly a "relative" as defined by North Carolina General Statute Section 7B-101(18a), since he is related to David by blood. *Id.* Both parents are necessarily "relatives" of a child, but not all "relatives" are parents. The term "parent" is not defined for purposes of Chapter 7B. However, in cases addressing the definition of a "parent" in the context of a criminal statute, this Court has discussed the definition:

> Black's Law Dictionary defines a "parent" as "the lawful father or mother of someone." Black's Law Dictionary 1222 (9th ed. 2004). "Parent" has also been defined in essentially the same way in various statutes. *See, e.g.,* N.C. Gen.Stat. §§ 51-2.2 (2007) (As used in this Article, the terms "'parent,' 'father,' or 'mother' includes one who has become a parent, father, or mother, respectively, by adoption."); 108A-24(4b) (2007) ("'Parent' means biological parent or adoptive parent."). Thus, a "parent" pursuant to N.C. Gen.Stat. §§ 51-2.2 and 108A-24(4b) is a biological or adoptive parent, mother or father, of a child. *See* N.C. Gen.Stat. §§ 51-2.2; 108A-24(4b); *see also* Black's Law Dictionary 1222. We believe that the definition of a parent as a biological or adoptive parent best fits the intent and purposes of N.C. Gen.Stat. § 14-208.6(1i) (2007).

*State v. Stanley*, 205 N.C. App. 707, 710, 697 S.E.2d 389, 391 (2010) (brackets omitted).

Also, this Court has previously interpreted North Carolina General Statute Section 7B-905.1(c) as applying to an order where a parent has been granted custody and thus treated a father as a "relative" for purposes of North Carolina General Statute Section 7B-905.1(c). *See In re J.D.R.*, 239 N.C. App. 63, 75, 768 S.E.2d 172, 178-79 (2015). In *In re J.D.R.*, this Court remanded for the trial court to make more detailed visitation provisions where the father had been granted custody of the child. *Id.* In that case, the trial court's order gave the mother some minimum specified visitation but also gave the father

> substantial discretion over other kinds of visitation, such as [the m]other having lunch with the [c]hild at school. It also provides a number of future, conditional expansions of [the m]other's visitation rights that effectively are contingent on [the f]ather deciding that [the m]other has complied with the trial court's directives.

*Id.* Based on the provisions of that order, this court determined that "the trial court impermissibly delegated its judicial function to [the f]ather. The trial court effectively turned [the f]ather into [the m]other's case worker and also gave [the f]ather the authority to determine whether [the m]other complied with the trial court's directives." *Id.* at 75, 768 S.E.2d at 179; *see also In re A.P.*, 281 N.C. App. 347, 868 S.E.2d 692 (2022). Therefore, even if Section 7B-905.1(c) could be construed as not applying to a parent, this Court has determined that it did apply to a parent who was granted custody of a child in *In re J.D.R.* and in *In re A.P.* and we are bound by those opinions. *See In re Civil Penalty*, 324 N.C. 373, 384, 379 S.E.2d 30, 37 (1989) ("Where

a panel of the Court of Appeals has decided the same issue, albeit in a different case, a subsequent panel of the same court is bound by that precedent, unless it has been overturned by a higher court." (citation omitted)). However, the Juvenile Order in this case grants Mother visitation at a specific frequency and length and provides that the visitation will be supervised. It also authorizes additional supervised visitation if Mother and the father are able to agree. Here, the trial court did not give the father excessive discretion over visitation as Mother contends.

In *In re A.P.*, this Court addressed a similar situation where the child's father was granted custody and the mother was granted supervised visitation. *See* 281 N.C. App. at 359, 868 S.E.2d at 701. We noted the order at issue "specified the minimum frequency . . . as well as the length of the visits . . . Furthermore, the [o]rder specified that the visits shall be supervised" and "[t]herefore, the [o]rder met the minimum requirements for a visitation plan under N.C. Gen. Stat. § 7B-905.1." *Id*. at 360, 868 S.E.2d at 702.

After discussing relevant caselaw, we concluded in *In re A.P.* that despite specifying the frequency and duration of the visitation and whether it will be supervised or unsupervised, the order still gave the father too much discretion:

> After careful review, we agree the trial court improperly gave [the r]espondent-[f]ather substantial discretion over the circumstances of [the r]espondent-[m]other's visitation by allowing him to choose the location and supervisor of the visitation. *See In re J.D.R.*, 239 N.C. App. at 75, 768 S.E.2d at 179 (concluding the trial court's "disposition order delegates to [respondent-father] substantial discretion

- 14 -

over [some] kinds of visitation" by allowing him to determine whether the respondent-mother could eat lunch with the minor child at his school); *In re K.W.*, 272 N.C. App. at 496, 846 S.E.2d at 591 ("We have consistently held that [t]he court may not delegate [its grant of] authority [over visitation] to the custodian.") (internal quotation marks omitted). Moreover, [the r]espondent-[f]ather testified he was not willing to facilitate or supervise [the r]espondent-[m]other's visits and did not want [the r]espondent-[m]other to be part of [the child's] life. This is precisely the scenario we cautioned against in *Stancil*: the trial court's grant of authority to a custodian-parent to decide the circumstances of the other parent's visitation plan, which could completely deny that parent of his or her right to visit with the minor child. *See In re Custody of Stancil*, 10 N.C. App. at 552, 179 S.E.2d at 849. Therefore, we hold the trial court's visitation order improperly delegated a judicial function to [the r]espondent-[f]ather by allowing him *the sole discretion to decide where and by whom [the r]espondent-[m]other would be supervised during her visitations with the minor child*. We vacate the visitation order and remand to the trial court for a proper visitation plan.

*Id*. at 361, 868 S.E.2d at 702 (emphasis added).

The father does not have sole discretion to determine where visitation will occur or who will supervise visitation here. First, the trial court ordered the minimum frequency and duration of the visitation and ordered it to be supervised. The trial court did not give the father discretion "to decide where and by whom" Mother was to have visitation. *Id*. Instead, the trial court specifically ordered that the visits would be supervised by Time Together, a professionally supervised visitation service provided in Wake County by Triangle Family Services. The trial court directed that each parent would need to contact Time Together "as soon as

possible" to facilitate a visitation plan. This provision does not give the father discretion to set Mother's visitation. The trial court simply addressed the fact that as a practical matter, personnel at Time Together would have to consult with both Mother and the father to arrange a visitation schedule that would work for both parents and the supervisor. The trial court granted minimum visitation of one hour every other week, so if the father never contacted Time Together to set up the visitation schedule or refused to bring David to scheduled visits, he would be in violation of the Juvenile Order. This visitation plan does not risk "a complete denial of the right" to visitation as was the concern noted in *In re Stancil*. 10 N.C. App. at 552, 179 S.E.2d at 849. We conclude the trial court did not err in its visitation decree in the Juvenile Order.

## III. Conclusion

As David's father was granted custody of David, achieving the primary plan of reunification, the trial court entered sufficient findings under North Carolina General Statute Section 7B-906.1(d)(3). Further, since the trial court did not grant excessive discretion over the visitation plan to the father, the trial court did not err in the visitation decree. We thus affirm the Juvenile Order.

AFFIRMED.

Judges HAMPSON and GORE concur.

Report per Rule 30(e).